Davis v. The City of Clinton.

50  585
107  514
50  585
e124  39 1.

DAVIS ET AL. v. THE CITY OF CLINTON.

1. **Municipal Corporations: STREET : AREA.** A city has the right to impose the conditions upon which an adjacent property owner may be permitted to excavate an area under a sidewalk, and until the conditions it has imposed are complied with, it is authorized to forbid such excavation to be made.

*Appeal from Clinton Circuit Court.*

WEDNESDAY, APRIL 23.

THE plaintiffs are the owners of a building situated on the corner of Second street and Sixth avenue, in the city of Clinton. During the spring and summer of 1877 they excavated a portion of Sixth avenue opposite the side of said building, and into Second street, to the depth of from six to eight feet, and some eleven or twelve feet in width. The area thus formed was intended for their own private use, in connection with the basement of their building. On the outer edge of the excavation they erected a stone wall, and the purpose and intent was to cover the area thus made in such a way as to make a sidewalk on said streets. After the area was completed on Sixth avenue, and while the plaintiffs were engaged in excavating in Second street, the city council had a meeting and resolved that the work should not proceed unless the plaintiffs would execute a certain written contract, fixing the rights and liabilities of the respective parties growing out of the construction and maintenance of said area. The plaintiffs refused to execute said contract unless modified, and commenced this action to enjoin the city from interfering with the progress of the work. A temporary injunction was allowed without notice to the city authorities. A motion to dissolve the injunction was made upon the answer of the defendants and upon affidavits. The motion was resisted by counter-affidavits upon the part of the plaintiffs. The motion to dissolve was overruled. Defendant appeals.

Davis v. The City of Clinton.

*C. W. Chase*, for appellant.

*Corning & Grohe*, for appellees.

ROTHROCK, J.—The defendant is a city of the second class,. and was duly organized under the laws of this State. The title in the land platted and dedicated to the public as streets is vested the city. Code, § 561. "As against the adjoining lot owner or original dedicator, the city has full control over the whole street, and not simply over the surface, and it can maintain an action against any person who, without its permission, removes any material from the body of the street, whether such material be superficial or subterraneous." *City of Des Moines v. Hall*, 24 Iowa, 234. It follows that if the plaintiffs in this case had the right to excavate the streets, and use a part thereof for their private purposes, it must have been by reason of a grant,. permit or license from the city. Whether they had such permission is the question we are required to determine.

It is not claimed that any ordinance or resolution of the city council was in force or had ever been adopted, granting the right to the public, or to these plaintiffs specially, to remove sidewalks and excavate areas adjoining the basement of buildings. It is shown that others have made such excavations and areas under the sidewalks in Second street, and in other streets in the city. Granting that they have the right. to maintain them because the city authorities, by silence, permitted them to be excavated—a point, however, which we do not decide—this would not authorize the plaintiffs to make such excavations when forbidden by the proper city authority. Such a rule would practically deprive the city of its control of the streets, and of its right to prohibit such excavations for all time to come. Suppose that before the plaintiffs commenced their excavation in Sixth avenue the city had passed an ordinance prohibiting the excavating of basement

*(margin note: 1. MUNICIPAL corporations: street: area.)*

areas, the claim that such an ordinance could not be enforced, because before its enactment certain owners of lots had made such excavations, would scarcely be made in a court of justice. If made, its mere statement would be its own best refutation.

We will now proceed to examine what the city authorities did in the way of permitting plaintiffs to make the excavation in controversy, and what was proposed or attempted to be done in the way of interfering with the progress of the work, which plaintiffs made the basis of their application for an injunction.

It is not urged that there was any express permission given. The most that can be claimed is that while the excavation was being made in Sixth avenue and out to the point of intersection with Second street, the city authorities removed the earth taken from the excavation, and, by one of its officers, gave some directions as to how the work should be done. If these acts were done, and no other action was taken by the city, the plaintiffs might, with some show of right, claim that the defendant should be held to be estopped from ordering the excavation to be filled up. But, before any work was done by plaintiff, the city council, on the 17th day of April, 1877, passed the following resolution:

"*Resolved*, By the common council of the city of Clinton, That the committee on streets and alleys be and are hereby authorized to consult with the owner of Davis block upon a basis for a contract between said city and said owner, by which said owner *shall construct* a substantial wall under the sidewalk, and near the outer edge thereof, on the east and north sides of said block, *at a cost to the city* not to exceed the *tax* against said property, for the improvement of the street on Second street, opposite the Davis block, in the year 1875. Said contract, when agreed upon, to be submitted to the city council for approval or rejection."

We think the record before us shows beyond question that

the plaintiffs, after the passage of this resolution, and before the commencement of the excavation, were requested by certain members of the city council to enter into a written contract to be submitted to the council for approval or rejection, and that they promised to do so, but neglected it, and entered upon the work.

On the 11th day of June, 1877, the city council passed the following resolution:

"WHEREAS, Complaints have been made that the sidewalk on the east and north sides of the Davis block, situated on the corner of Sixth avenue and Second street, is being constructed above grade, therefore,

"*Resolved*, By the common council of the city of Clinton, that the owner of said block, and all parties engaged in constructing said walk, be and are hereby ordered to construct said walk so as to conform to the grade of sidewalks established in that locality, and if any portion of said wall which is now constructed is not to the grade, that the parties are directed to put the same to grade."

On the 27th day of June a committee of the council theretofore appointed made the following report to the council, which was adopted:

"Your committee appointed to confer with Mr. Davis would beg leave to report that Mr. Davis would enter into a written agreement with the city of Clinton to build a good, substantial wall and sidewalk to grade on Second street; also that he (Davis) will hold the city harmless from any surface water running through said walls, he retaining the dirt under said walk. Your committee would recommend that the city enter into said agreement with Mr. Davis."

No written contract was at any time entered into. The plaintiffs proceeded with the work on Sixth avenue until it was completed, and then refused to enter into a written contract.

When the plaintiffs commenced the removal of the sidewalk in front of their building on Second street, and com-

menced the excavation on that front, the city council caused a written contract to be prepared, and passed a resolution that plaintiffs should not excavate under the sidewalk on Second street until said contract should be signed by them. This contract was presented to plaintiffs, and they refused to execute it unless modified. It was further resolved by the council, "that, if there be no arrangement made with Mr. Davis, the street commissioner be notified to replace the sidewalk in front of the Davis block, put back the dirt, and pack the dirt behind the curbing." Thereupon the plaintiffs made application for and obtained the injunction. That it should have been dissolved we entertain no doubt. That the plaintiffs at all times understood that there was to be a written contract, settling the rights of the parties, is beyond question. With full knowledge of this they entered upon the work. They were not misled by the city council nor any officer of the city. They were in no position at any time to demand that the contract should contain certain stipulations, or to impose any terms whatever upon the city. Instead of complying with the demands of the city, and entering into a contract as required, they proceeded with the work, and now claim a right to do so, and that the city must not interfere with them because the officers thereof, relying on their promises to enter into the contract, did not sooner stop the excavation.

After the cause was submitted to the court below, on the motion to dissolve the injunction, the plaintiffs filed certain stipulations, binding themselves to perform certain acts. This was evidently done to give them a standing in court. Without these stipulations they had no cause of action whatever. We need not set them out nor determine whether they meet the requirements of the city. It does not appear that the city, by its proper officers, approved of such stipulations and assented thereto. If they had given such assent that would have been an end of the controversy. The plaintiffs, as we have found, could not lawfully excavate the streets except by permission of the city, and then only upon such

conditions as the city should see proper to impose, and no such right could be acquired except by contract, express or implied, with the city. The stipulations filed after the submission of the cause cannot be held to be such a contract.

REVERSED.