BENJAMIN NICOLL ET AL., PLAINTIFFS IN ERROR, v. THE NEW YORK AND NEW JERSEY TELEPHONE COMPANY, DEFENDANT IN ERROR.

Argued November 21, 1898—Decided March 6, 1899.

1. The right of a telephone company to erect a telephone line within the limits of a public highway, upon land the fee of which is owned by private persons, imposes an additional servitude upon the fee, and can be acquired, against the consent of such persons, only through the power of eminent domain.

2. Proceedings to acquire such a right under the Telegraph and Telephone Companies act (*Gen. Stat.*, p. 3460), are regulated by the Eminent Domain act (*Id.*, p. 1386).

3. Under the Eminent Domain act (*Gen. Stat.*, p. 1386), it is not essential to the jurisdiction of the court, to which an appeal from the award of commissioners has been taken, that the appellant should, within ten days after filing the petition of appeal, give written notice of the appeal to the opposite party; and under exceptional circumstances the court may legally proceed to try the appeal, although such notice was not given within the time stated.

---

On error to the Supreme Court. For opinion of the Supreme Court, see *ante p.* 156.

For the plaintiffs in error, *Stephen H. Little.*

For the defendant in error, *John B. Vreeland* and *George T. Werts.*

The opinion of the court was delivered by

DIXON, J.  This writ of error brings up a judgment of the Supreme Court dismissing a writ of *certiorari* sued out by the plaintiffs in error on the following state of facts: The plaintiffs in error are owners of lands in Morristown, fronting on Sussex avenue and having for their southerly boundary the middle of the avenue.  In 1896 the defendant in error commenced proceedings, under the Telegraph and Telephone Companies act of June 20th, 1890 (*Gen. Stat., p.* 3460), to acquire a right to place poles and wires for a telephone line on the plaintiffs' land in said avenue.  According to the order made in said proceedings, the commissioners' appraisement of damages was to be filed, and in fact was filed, by May 1st, 1897, and on May 4th, 1897, the defendant filed with the Circuit Court of Morris county a petition of appeal from said appraisement, but failed to serve notice of appeal upon the plaintiffs until August 27th, 1897.  Notwithstanding this failure the Chief Justice, sitting in said Circuit, made the order for trial, &c., prescribed by the third section of the Eminent Domain act of March 9th, 1893 (*Gen. Stat., p.* 1386), but allowed a *certiorari* to test the legality of the order.

The legality of the order is denied by the plaintiffs, because written notice of the appeal was not served upon them within ten days after the filing of the petition of appeal, as directed by said act of 1893, but the *certiorari* was dismissed by the Supreme Court upon the ground that the proceedings were not governed by that act, because the acquisition of the right sought by the defendant was not "the taking of property for public use," to which alone the act of 1893 is applicable.

The language of the act of 1893 is evidently borrowed from the constitutional injunction that "private property shall not be taken for public use without just compensation,"

and clearly expresses a purpose to regulate the procedure for all cases within the scope of that injunction, since it enacts that "all acts or provisions inconsistent with the provisions of this act shall be and are hereby repealed, and the practice prescribed by this act shall supersede the existing practice in all condemnation cases before commissioners or on appeal, so far as the provisions of this act shall extend."

We must, therefore, consider whether the acquisition by a telephone company of a right to erect poles and place wires and other fixtures for telephonic purposes along a public street wherein the fee of the land belongs to private persons, without the consent of such persons, is the taking of private property.

If the land were not subject to the easement of a public street, the matter would not be debatable; but it is equally clear that, whenever the property of the owner of the fee in a highway is subjected by law to an additional servitude, it is taken, within the meaning of the constitution. The contention, therefore, must be over the question whether the right thus to be acquired would be an additional servitude upon the fee, or is embraced within the public easement, and hence grantable by the public for public use without regard to the owner of the fee.

The public easement, as interpreted in this state, is primarily a right of passage over the surface of the highway and of so using and occupying the land within it as to facilitate such passage. In this primary right are included the grading, paving, cleaning and lighting of the highway, the construction and maintenance of street railways with the apparatus proper for their use, and the maintenance of appliances conducive to the protection and convenience of travelers while using the way. Secondarily, the easement covers uses which, though their relation to the right of passage is remote, or even fanciful, are so generally advantageous to the owners of the fee, the owners of abutting property, that, rather by common consent and custom than by logical deduction from the primary design, they are now recognized as legitimate. Such are the

construction and maintenance of sewers, water pipes and gas pipes for the convenience of persons occupying neighboring lands. *State* v. *Laverack*, 5 *Vroom* 201.

The argument to support the proposition, that the right to construct and maintain a telephone line for common public use is within this easement, is that the structures required for the exercise of the right are mere adaptations of the road to the passage of the electric current, which thus travels along the highway.

But the resemblance between this use and that ordinarily enjoyed under the easement scarcely goes beneath the words by which it may be described. In reality, the electric current does not use the highway for passage—it uses the wire—and would be as well accommodated if the wire were placed in the fields or over the houses; the highway is used only as a standing place for the structures. Such a use seems to us to be so different from the primary right of passage as to be essentially distinct. Nor does it rest on the same footing as those secondary uses to which allusion has been made. Telephone lines in a street do not afford to the occupants of neighboring property such general convenience, nor have they been permitted with such common and continued acquiescence, as sanction the other uses mentioned.

We therefore think that the right now under consideration is not within the public easement, and can be acquired, against the consent of the private owner of the fee only by condemnation under the power of eminent domain.

To this effect has been the trend of judicial opinion in this state. *Turnpike Co.* v. *News Co.*, 14 *Vroom* 381; *Broome* v. *New York and New Jersey Telephone Co.*, 20 *Id.* 624; *Duke* v. *Central New Jersey Telephone Co.*, 24 *Id.* 341; *Marshall* v. *Bayonne*, 30 *Id.* 101; *Halsey* v. *Rapid Transit Railway Co.*, 2 *Dick. Ch. Rep.* 380, 393; *Paterson Railway Co.* v. *Grundy*, 5 *Id.* 213, 225. Our legislation also has seemed to rest on the same opinion.

We deem it unnecessary to discuss the views of courts in other jurisdictions—they are irreconcilable; and those on each

side may be found cited in *Magee* v. *Overshiner*, 49 *N. E. Rep.* 951, where the Supreme Court of Indiana arrived at a conclusion opposed to that above expressed.

The question therefore arises whether, in view of the act of 1893, the writ of *certiorari* was properly dismissed.

This question is treated in the argument before us as depending upon the power of the Circuit Court or a judge thereof to make an order for the trial of the appeal in a case where the appellant has not given to the other party written notice of the appeal within ten days after filing the petition.

Without stopping to inquire whether there exist any technical objections to the review of such an order by *certiorari* and before the final determination of the appeal, we will consider the matter as it has been presented.

The case of *Proprietors of Morris Aqueduct* ads. *Jones*, 7 *Vroom* 206; *S. C.*, 8 *Id.* 556, is urged as a controlling authority in favor of the plaintiffs in error. The principle laid down in that case is that, in considering whether a statutory prescription is mandatory or merely directory, the legislative will must be ascertained, not from the meaning of the text of the statute alone, but from such words interpreted in view of the general object of the particular act. On that principle the court concluded that the requirement of notice was, according to the law then *sub judice*, mandatory.

There is, however, an obvious distinction between that case and this. There the notice required was clearly made a condition precedent to the jurisdiction of the court over the appeal, the words of the act being "which petition *and notice so served or published* shall vest in said court full power to hear and determine said appeal." Here the requirement of notice presupposes an appeal taken and jurisdiction over the subject-matter vested in the court, for the notice is to set forth that *an appeal has been taken*, and the statute expressly authorizes the judge of the court to which the appeal is taken to direct how, in certain contingencies, the notice shall be given.

In cases like the former the statute must be held manda-

tory, for there is no impartial tribunal to lay down a rule in accordance with the spirit, though not the letter, of the law, if it be deemed directory only, while in the other ·class of cases ·judicial discretion may be invoked to determine, first, whether the statute demands exact compliance with its terms, and if not, what will amount to substantial compliance in view of the main purpose of the legislation.

No doubt if the legislature, within the range of its power, has evinced an intention to make the lawful continuance of a cause in court, or the lawful interposition of a defence to such a cause, dependent on strict obedience to the rule which it prescribes, courts as well as parties are bound thereby, but, in deciding whether such an intention appears, there is always present the presumption of a legislative design that courts shall administer justice in pending causes and regulate their practice to that end.

When, with this presumption, we examine the statute under review, the requirement of a written notice within ten days after filing·the petition of appeal does not seem to be absolute and imperative. This appears, first, from the provision that, when the party to be notified cannot be found in the state, the judge of the court may direct a substituted notice to be given, and secondly, from the provision that "the court shall make such further orders and take such further proceedings as may be requisite according to the practice of the court, * * * ˙ and may permit such amendments of the proceedings * * * as may be reasonable and proper for the fair trial of the case."

These clauses indicate that the chief object of the legislature was to secure a fair trial for the litigants when once the case was brought into court, and that while it regulated the practice for cases which presented no exceptional features, its rules· were not meant to be inflexible but were subjected to the judicial discretion of the court when special circumstances intervened which would render their strict enforcement subversive of the main design.

Under what special circumstances the Chief Justice made

the order now in question, notwithstanding the lack of written notice given within the time limited, the state of the case before us does not disclose, and therefore we must assume that they were such as called for the exercise of judicial discretion. That discretion cannot possibly be reviewed without knowledge of the matters with which it dealt.

Our conclusion is that the writ of *certiorari* was rightly dismissed.

*For affirmance*—THE CHANCELLOR, DIXON, LIPPINCOTT, GUMMERE, LUDLOW, COLLINS, BOGERT, NIXON, HENDRICKSON, ADAMS, VREDENBURGH. 11.

*For reversal*—None.