WENDELL ANDREAS

*v.*

THE GAS AND ELECTRIC COMPANY OF BERGEN COUNTY.

[Submitted November 14th, 1900.   Decided November 17th, 1900.
Filed June 4th, 1901.]

1. The placing by a licensee of a municipal corporation, on a public ·sidewalk, the fee of which is in an adjoining owner, of poles for furnishing light by electricity for private consumption, is a taking of such owner's land, for which he is entitled to compensation, since the legislature has not authorized municipal corporations or their licensees to erect poles on sidewalks for conducting electricity for use in private lighting, but has, by act of April 21st, 1896 (*P. L. of 1896 p. 322*), authorizing the use of the public highways for distribution of electricity, forbidden such erection without the landowner's consent.

2. Act of March 24th, 1899 (*P. L. of 1899 p. 399 § 67*), authorizing the township committee to contract with any private corporation for supplying light for public use in the township, does not authorize the licensee of the township to use the public highway for private lighting without making compensation to the owner of the soil, since the authority given by impli-cation must be confined to lighting the streets within the municipality.

---

Heard on bill, answer and affidavits.

*Mr. Charles L. Corbin,* for the complainant.

*Mr. Milton Demarest,* for the defendant.

PITNEY, V. C.

The object of the bill is to obtain an injunction from this ·court to prevent the defendant from erecting poles to support ·electric wires in front of the complainant's land.

The complainant is the owner of a tract of land in the township of Teaneck, in the county of Bergen, which is bisected by a road known as the River road.

The defendant is a corporation whose business is "the furnishing of light and power by electricity throughout a great part of the county of Bergen to private consumers and also for public lighting," and is actually engaged in the business of lighting the streets of the township of Teaneck.

On the 21st of September, 1900, the defendant entered into a written contract with the municipal authorities of Teaneck by which the defendant agreed to furnish

"sixty or more street lights, with all the appurtenances, posts, wires, &c., necessary for the maintenance and operation of the same, and to light the said lights with their full power every night according to the standard all-night lighting schedule,"

for the term of five years from October 1st, 1900, and the township agreed to pay certain annual compensation therefor. The contract does not locate any of the lights to be so furnished, nor provide, other than as may be implied from what is above stated, for the erection of any poles in any particular street or streets. By a subsequent arrangement the term of the contract was reduced from five years to one year. This was done for the purpose of preventing its being rendered void by reason of a lack of preliminary formalities requisite to authorize a contract for a term of years.

In pursuance of that contract the defendant proposes to erect several poles on Pine street in front of the complainant's premises. The street where it crosses complainant's premises is rather narrow, and he proposes to widen it, and with that view pointed out to the defendant's workmen where his new street line would be, and the positions where its poles must be placed. The defendant construed this pointing out by the complainant as a permission by him to place its poles, and proceeded to dig holes in the complainant's fields.

No fault is found by the complainant with the location of the holes, nor was any proof offered as to just where in the line of the street when widened as proposed the poles will stand, but it

is to be inferred that they will be placed where such poles are usually placed, namely, in the edge of the sidewalk, and not in any part of the traveled wagon road or gutter.

The defendant brought on the ground the poles which it proposes to erect, and when the complainant saw these he forbade their erection, and applied to this court for an injunction, obtained a restraining order, and the poles have not been erected.

The complainant swears and contends that he has not assented to the erection of any poles, and that the defendant has no right to erect poles in the excavations made for them, without either his consent or condemnation by proper proceedings of the right to erect them.

It was supposed at the argument that the act of May 22d, 1894 (*P. L. of 1894 p. 474; Gen. Stat. p. 2174 § 242*), justified the erection of poles for certain purposes without the consent of the owner. But this act was subsequently found to have been repealed by the act of 1899 (*P. L. of 1899 p. 426*), so that there is now in existence no statute which directly authorizes the erection of such poles without the consent of the landowner.

The only other act now in force which deals directly with the subject is the act of April 21st, 1896 (*P. L. of 1896 p. 322*), and that requires the consent in writing of the owners of the soil.

The defendant relies for its right to act without such consent on the Township Revision act of March 24th, 1899. *P. L. of 1899 p. 399 §§ 67, 68.* Section 67 reads as follows:

"The township committee shall have the power to provide for lighting the streets and public places of the township, and for that purpose may contract with any person or private corporation for a supply of light for public use in said township."

Section 68 provides that no contract shall be made for more than one year, without certain preliminary formalities.

Counsel contends that the sixty-seventh section gives power to the township authorities to make such a contract as was made in this case, and that by implication it is authorized to use the public highways for that purpose without making compensation to the owner of the soil, and relies upon the case of

*Halsey* v. *Rapid Transit Street Railway Co.,* decided by Vice-Chancellor Van Fleet, and reported in *2 Dick. Ch. Rep. 380.*

There the question was whether poles erected in the center of the street and just on the line of complainant's land, for the purpose of stringing wires for the conduct of an electrical current which should serve for two purposes, first, in propelling street cars, and second, for lighting the streets, was an additional burden upon the owner of the fee over and above that of a public highway, for which he was entitled to have compensation.

The vice-chancellor says (at *p. 393*) : "The decision in these cases was placed upon this manifestly just principle : that the question whether a new method of using a street for public travel results in the imposition of an additional burthen on the land or not, must be determined by the use which the new method makes of the street, and not by the motive power which it employs in such use. The use is the test and not the motive power. And this principle exhibits in a very clear light the reason why it has been held that *the placing of telegraph and telephone poles in the street imposes an additional servitude on the land. They are not placed in the street to aid the public in exercising their right of free passage, nor to facilitate the use of the street as a public way, but to aid in the transmission of intelligence.* Although our public highways have always been used for carrying the mails and for the promotion of other like means of communication, yet the use of them for a like purpose, by means of the telegraph and telephone, differs so essentially in every material respect from their general and ordinary uses, that the general current of judicial authority has declared that it was not within the public easement. Massachusetts has, however, by a divided court held otherwise."

And again (at *p. 395*) he says: "There can, however, be no doubt, I think, that erections may be lawfully made in the streets of a city for the purpose of lighting them. They must be lighted at night to make their use safe and convenient and to prevent lawlessness and crime. By the charter of Newark, power is given to its governing body, by express words, to light the streets, parks and other public places. I have no doubt that in virtue of this

Andreas *v.* Gas and Electric Company.

power the city has the right to erect poles in the street just where the poles in question are. The poles in question are in fact to be used for the purpose of lighting the street. One of the conditions on which the city gave its consent to the erection of the poles is that the defendant shall place on every other pole a group of five incandescent lights of sixteen-candle power each, and furnish such light every night. This use of the poles and wires would, in my judgment, legalize their erection, but this is not their primary use. They were erected primarily and principally to facilitate the use of the street and add to its convenience as a public way, and it is upon this ground that I think it should be declared that their presence in the street invades no right of the complainant."

But the learned vice-chancellor, in the previous part of his opinion, clearly distinguishes between an erection of any kind placed in the part of the street devoted to the use of vehicles, and that devoted for the use of a sidewalk. He says (at *p. 387*) : "The poles have been placed on that part of the complainant's land where, if their erection constitutes a legal injury at all, they will do the least possible harm. They have been placed on the edge of his boundary line, at a point where, so long as his land remains subject to the public easement, it is not possible for him to make any use whatever of the land. *Had they been placed on the sidewalk in front of his premises, rights growing out of a duty incumbent upon the abutting owner in respect to that part of the street, might have made it the duty of the court to consider questions not at all involved in this case."* And then, after citing authorities showing the peculiar rights of the landowner in the sidewalk, he says (at *p. 388*) : "These utterances show that there is a material distinction between the rights of an abutting owner in the sidewalk adjacent to his premises and those which he may exercise over the other part of the street. I entertain no doubt that that part of the street which has been set apart for public use by means of vehicles may be lawfully applied to uses which would be unlawful as against the adjacent owner if exercised against his will, on the sidewalk which his money has paid for."

The counsel of defendant further relies upon the case of *Meyers*

v. *Hudson County Electric Co.,* decided by the court of errors
and appeals November 27th, 1899, and reported in *34 Vr.
573.* There the court dealt with the act of May 22d, 1894,
which, as we have seen, has been repealed, and which expressly
authorized the erection and maintenance of all necessary and
proper posts, poles, lanterns and fixtures on any or all of the
public roads, streets, lanes or alleys. And it was held that the
ordinance there drawn in question was not invalid because it
authorized the erection of poles upon the lands of the prosecu-
tor, presumably in the margin of the sidewalk.

That case was based on the case of *Roebling* v. *Trenton Pas-
senger Railway Co., 29 Vr. 666,* which, as well as *Meyers* v. *Hud-
son County Electric Co.,* was a *certiorari* to test the validity of
an ordinance which authorized the setting of poles to sustain
wires to be used for conducting electricity to propel a street
railway. The distinction between the sidewalk and the traveled
way, taken by Vice-Chancellor Van Fleet in *Halsey* v. *Rapid
Transit Street Railway Co.,* was not dealt with in either case.
In the *Roebling Case* the ordinance under review provided speci-
ally for the setting of certain poles in the edge of the sidewalk
on complainant's property, and the contention of the prosecu-
trix was that it would result in putting an additional burden on
her land. Mr. Justice Depue, in speaking for the court of errors
and appeals, says that the fact that the carrying out of the ordi-
nance may work an actionable injury to the prosecutrix's land
was not a reason for setting it aside, but that the prosecutrix
should be left to her action at law. He says (at *p. 675*) : "If
any of the privileges granted by this statute are made the occa-
sion for unlawful injuring the owners of abutting property, such
acts of the company are *ultra vires* and redressible by action at
the suit of the injured party. The act of the legislature is a
general law for the equipment of street railways throughout the
state, and the ordinance under review is, in those respects which
are material to this controversy, similar to the ordinances under
which many street railways have been equipped and operated.
A decision that such ordinances and the statute under which
they were made were invalid for the reason that, in a particu-
lar case before the court, it should appear that these privileges

have been made the occasion for unlawfully injuring private property, when such injury was not the direct product of the ordinance, would be disastrous to public interests and not warranted in law. For such injuries, the remedy of the party injured is by action. If the acts done under color of the ordinance, or the statute, be found to be an unlawful invasion of the rights of private property, an action will lie in which neither the ordinance nor the statute would be a justification."

But I do not find it necessary to determine the question, if there be any question, of the right of the municipality, under the sixty-seventh section of the Township act, to erect poles for public lighting purposes on the sidewalk in front of complainant's land without his consent, for the reason that the complainant's counsel, at the hearing, and in his written argument, expressly assents to the erection of such poles for the purpose of lighting the streets of the township of Teaneck, but not for the purpose of private lighting or the transmission of power, or of carrying electricity over wires to adjacent districts outside of that township. This assent is made upon the express condition that the poles to be erected shall be no larger and have no more arms than are reasonably necessary for the purpose of public lighting of the township of Teaneck.

The complainant contends that it is manifest from the size and character of the poles and arms to be attached thereto brought upon the ground, that the object is something more than the mere lighting of the streets of Teaneck; that the object is to furnish power and light to individual consumers both in that township and in the adjacent neighborhood, and also to put upon the poles wires to extend through to other townships and territory outside of Teaneck, and that in so doing will put an additional burden upon his land, for which either his consent must be observed or compensation made.

The proofs show that the poles to be erected are forty feet high and about eighteen inches in diameter at the butt; that they are notched for four cross-arms, and that the cross-arms brought on the ground are marked for six wires, making in all twenty-four wires to be strung in front of complainant's land. It was hardly affirmed in the affidavits, or contended in the argu-

ment, that poles of that size, with so many arms upon them, are necessary for simply the purpose of public street lighting in the township of Teaneck. In fact, the affidavits show that they are much larger than those previously used by defendant in Teaneck.

The purpose of the defendant's incorporation, as stated in the bill and admitted in the answer, is the "supplying of light and power by electricity through the greater part of the county of Bergen to private consumers, and also for public lighting." And common knowledge leads to the inference that in order to reach one township it may be necessary for it to cross another township. Now here comes in the distinction taken by the court of errors and appeals in the case just cited—*Meyers* v. *Hudson County Electric Co.*—between public lighting and private lighting. The act of 1896 was held by that court to apply only ·to private lighting—that is, lighting the houses of private individuals; and that act expressly provided for the consent of the landowner. And there is, I think, a clear distinction between the function of providing light for strictly public purposes, and private purposes; precisely as there is a distinction between providing water for municipal purposes, extinguishment of fires and sprinkling of streets, and providing it for private consumers. The municipality may be under an actual or implied obligation to supply water for the extinction of fires, and light for the lighting of streets, while it is under no such obligation to furnish either of those elements for private use. And this position is not inconsistent with the general proposition that the furnishing of water and light for private use is a public purpose. This is perfectly well settled. But it is also perfectly well settled that private property cannot be taken for such a public use without compensation first made, and I can find nothing in the reported decisions or judicial utterances in this state which warrants the idea that because a municipality may undertake to supply either water or gas or electricity for lighting purposes to private consumers, it is thereby relieved of the constitutional duty of making compensation to persons whose property shall be taken for that purpose. At any rate, there is, so far as I know, no legislation in New Jersey authorizing such action with regard to lighting by electricity. As the law stands at this time

any corporation desiring to use private property for the purpose of furnishing light by electricity for private consumption must make just compensation wherever it takes, in the sense in which that word is used in that connection, private property for that purpose.

The question, then, is whether the placing on the public sidewalk, the fee of which with the adjoining property is owned by the complainant, poles for that purpose will be a taking of his land. I am of the opinion that it will be, in the sense that it will impose upon it a greater burden than can justly be implied from the laying out of a highway across, or the dedication of a part of his land for the purposes of a highway. As pointed out by Vice-Chancellor Van Fleet in the *Halsey Case,* the lighting of streets may be considered as necessary in order to make them safe for use at night. But this consideration does not reach the lighting of the interior of the houses built along their route.

It is a matter of common knowledge that the larger the pole, and the more numerous its arms and wires, the greater the nuisance to the premises before which it is erected. So that it is impossible to say that it is no greater injury to the owner of the land to erect thereon poles with arms for the purpose of conducting a current of electricity sufficient to be used for the purpose of power and for private lighting in a large district, than the erection of poles for a more restricted purpose.

The result is that I find that the legislature has not only not given authority to a municipality or its licensee to erect poles on the sidewalk to support wires to conduct electricity for use in private lighting or for the transmission of power, but has, by the act of 1896, above referred to, by implication, forbidden such erection without the consent of the landowner; and my impression is that such authority, if given, would probably be held to be unconstitutional, unless given upon terms of making compensation, and that the authority given by implication by the sixty-seventh section of the Township act of 1899 must be confined to the purpose of lighting the streets within the limits of the municipality.

The affidavits tend to show sufficiently for present purposes that the poles with arms and wires proposed to be erected upon

complainant's land are larger than is necessary for the purpose for which the legislature has authorized their erection, and will be a greater nuisance to complainant than that purpose requires. I will therefore advise an injunction against their erection.

The parties will be given a proper opportunity in the course of the suit to obtain a judicial determination upon the question as to what size of poles, and what number of arms thereon and wires to be strung thereon, are necessary for the lighting of the streets of Teaneck.