WESTERN UNION TELEGRAPH CO. v. POLHEMUS et al.

(Circuit Court, D. New Jersey. January 19, 1909.)

TELEGRAPHS AND TELEPHONES (§ 10*)—RIGHTS IN USE OF HIGHWAY—LAW OF NEW JERSEY.

Under the law of New Jersey, where the title of owners of land along a highway extends to the middle thereof, the easement for the highway does not include any grantable right by the public for the maintenance of a telegraph line thereon, nor does Rev. St. § 5263 (U. S. Comp. St. 1901, p. 3579), confer such right on telegraph companies accepting its provisions, and it can only be acquired by agreement with the owners of the fee.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Dec. Dig. § 10.*

Rights of telegraph and telephone companies to use of streets, see note to Southern Bell Telephone & Telegraph Co. v. City of Richmond, 44 C. C. A. 155.]

In Equity. On final hearing.

John H. Backes and Henry D. Estabrook, for complainant.
Willard C. Parker and H. L. Stout, for defendants.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LANNING, District Judge. The defendants are the owners in fee of lands abutting a public highway running between Lambertville and Neshanic, N. J. Their title, under the law of New Jersey, extends to the middle of the highway. The complainant is the owner of a telegraph line extending from New York to Philadelphia, supported by poles, a part of which are planted on the lands of the defendants within the lines of the highway. At the commencement of this suit, and for many years prior thereto, the telegraph line consisted of a single line of poles 150 feet apart. From time to time in the past the number of crossarms on the poles and of wires attached to the crossarms has been increased, until at the present time there are 5 crossarms on each pole, with 38 wires attached thereto. In order to strengthen the line the complainant has been doubling the number of poles on the highway, thereby placing them 75 feet apart. The defendants have cut down the additional poles planted on their lands, and the complainant now seeks an injunction to restrain them from such acts in the future.

The position assumed by the defendants is that the complainant has acquired no right to such additional appropriation or use of their lands. They say that to increase the number of poles on their lands, without their consent and without acquiring the right to do so by proper condemnation proceedings, is to impose an additional servitude thereon, and to take their property contrary to the protection granted them by the provision of the Constitution of New Jersey that "private property shall not be taken for public use without just compensation." The complainant, on the other hand, insists that, under the congressional act of July 24, 1866 (Act July 24, 1866, c. 230, 14 Stat. 221), embodied in sections 5263 to 5268 of the Revised Statutes (U. S. Comp. St. 1901, pp. 3579, 3581), authorizing any telegraph company organized under the laws of any state to construct, maintain, and operate lines of telegraph over and along any of the military or post roads of the United States, of which the road on which the complainant has attempted to plant its additional poles is conceded to be one, it has the right to strengthen its line in the proposed manner without the consent of the defendants and without compensation to them.

The trend of judicial opinion in the courts of the state of New Jersey has been that the public easement acquired by taking lands in that state for highway purposes does not include any grantable right by the public for the maintenance on such lands of telegraph lines by telegraph companies. Turnpike Co. v. News Co., 43 N. J. Law, 381; Broome v. Telephone Co., 49 N. J. Law, 624, 9 Atl. 754; Duke v. Central New Jersey Telephone Co., 53 N. J. Law, 341, 21 Atl. 460, 11 L. R. A. 664; Marshall v. Bayonne, 59 N. J. Law, 101, 34 Atl. 1080; Nicoll v. Telephone Co., 62 N. J. Law, 733, 42 Atl. 583, 72 Am. St. Rep. 666; Andreas v. Gas & Electric Co., 61 N. J. Eq. 69, 47 Atl. 555. In Nicoll v. Telephone Co. the right to use the highways for telephonic purposes was put on the same footing as the right to use them for telegraphic purposes, and in considering that right Mr. Justice Dixon, speaking for the highest court of the state, said:

"We must therefore consider whether the acquisition by a telephone company of a right to erect poles and place wires and other fixtures for tele-

phonic purposes along a public street wherein the fee of the land belongs to private persons, without the consent of such persons, is the taking of private property.

"If the land were not subject to the easement of a public street, the matter would not be debatable; but it is equally clear that, whenever the property of the owner of a fee in a highway is subjected by law to an additional servitude, it is taken, within the meaning of the Constitution. The contention, therefore, must be over the question whether the right thus to be acquired would be an additional servitude upon the fee, or is embraced within the public easement, and hence grantable by the public for public use without regard to the owner of the fee.

"The public easement, as interpreted in this state, is primarily a right of passage over the surface of the highway, and of so using and occupying the land within it as to facilitate such passage. In this primary right are included the grading, paving, cleaning, and lighting of the highway, the construction and maintenance of street railways, with the apparatus proper for their use, and the maintenance of appliances conducive to the protection and convenience of travelers while using the way. Secondarily, the easement covers uses which, though their relation to the right of passage is remote, or even fanciful, are so generally advantageous to the owners of the fee, the owners of abutting property, that, rather by common consent and custom than by logical deduction from the primary design, they are now recognized as legitimate. Such are the construction and maintenance of sewers, water pipes, and gas pipes for the convenience of persons occupying neighboring lands. State v. Laverack, 34 N. J. Law, 201.

"The argument to support the proposition, that the right to construct and maintain a telephone line for common public use is within this easement, is that the structures required for the exercise of the right are mere adaptations of the road to the passage of the electric current, which thus travels along the highway. But the resemblance between this use and that ordinarily enjoyed under the easement scarcely goes beneath the words by which it may be described. In reality, the electric current does not use the highway for passage, it uses the wire, and would be as well accommodated if the wire were placed in the fields or over the houses; the highway is used only as a standing place for the structures. Such a use seems to us to be so different from the primary right of passage as to be essentially distinct. Nor does it rest on the same footing as those secondary uses to which allusion has been made. Telephone lines in a street do not afford to the occupants of neighboring property such general convenience, nor have they been permitted with such common and continued acquiescence, as sanction the other uses mentioned.

"We therefore think that the right now under consideration is not within the public easement, and can be acquired against the consent of the private owner of the fee only by condemnation under the power of eminent domain."

The complainant is a corporation organized under the laws of the state of New York. The statutes of New Jersey do not give to any foreign telegraph corporation the privilege of exercising the power of eminent domain, nor does any congressional act confer such a privilege. In Pensacola Telegraph Co. v. Western Union Telegraph Co., 96 U. S. 1, 11, 24 L. Ed. 708, Mr. Chief Justice Waite said, concerning the congressional act of July 24, 1866:

"The use of public property alone is granted. If private property is required, it must, so far as the present legislation is concerned, be obtained by private arrangement with its owner. No compulsory proceedings are authorized. Such sovereignty under the Constitution is not interfered with. Only national privileges are granted."

There is nothing in any of the subsequent decisions of the Supreme Court inconsistent with this statement. That it is the reasonable and proper construction of the act is clear.

The complainant does not claim any right to plant its additional poles on the properties of the defendants by virtue of any law of the state of New Jersey. Manifestly, it has no such right. It bases its alleged right on the congressional act of July 24, 1866, and on the fact that it has filed with the Postmaster General, in accordance with the terms of that act, a written acceptance of its restrictions and obligations. The cases cited in support of the claim are not applicable. There is no legislation by the state of New Jersey that conflicts with the congressional act. If the complainant wishes to appropriate to its use additional property of the defendants, it must acquire the right to do so by private arrangement with them. There is nothing in the congressional act that authorizes such appropriation in any other manner. St. Louis v. Western Union Telegraph Co., 148 U. S. 100, 101, 13 Sup. Ct. 485, 37 L. Ed. 380; Western Union Telegraph Co. v. Pennsylvania R. R. Co., 195 U. S. 540, 569, 25 Sup. Ct. 133, 49 L. Ed. 312.

The bill of complaint will be dismissed, with costs.