LAUREL GARDEN CORPORATION, APPELLANT, v. NEW JERSEY BELL TELEPHONE COMPANY, A CORPORATION, RESPONDENT.

Argued October 23, 1931—Decided May 16, 1932.

For the appellant, *Joseph Zemel.*

For the respondent, *Smith & Slingerland.*

The opinion of the court was delivered by

BODINE, J. Plaintiff owning property on Springfield avenue, Newark, sued to recover damages because of the placement, under the sidewalk in front of his premises, of conduits for the purpose of carrying wires used in telephonic communication pursuant to legislative authority (*Comp. Stat., p.* 5314, § 8) and municipal permit. The conduits are nine feet three inches below the surface of the sidewalk and form an important link in the telephone system throughout northern New Jersey and the United States. Because of the existence under the roadway, of sewers, water pipes, gas mains and electric light and power conduits, and to avoid interruption of vehicular traffic, the municipal authorities directed the placement of the conduits under the sidewalk. The conduits carry wires not only to serve the residents along Springfield avenue, but are used also by telephone subscribers everywhere and by the government in the control of traffic along the avenue and the detection of crime.

The case was tried on an agreed state of facts before the court without a jury. There was no damage suffered by the

plaintiff other than an interference with its claimed right in the fee over which the public had an easement. The learned trial judge entered judgment for the defendant, holding that the placement of conduits was within the four corners of the public easement and in this there was no error.

"Apart from any statutory provisions the owner of the soil of a highway has right to all above and underground, except only the right of passage for the king and his people. *Goodtitle d. Chester* v. *Alker and Elmes* (1757), 1 *Burr.* 133, and may exercise all rights of ownership not inconsistent with the public right of passage." 16 *Halsbury, the Law of England, p. 55.*

In early days the king and his people passed on foot or on horse and that was the extent of the servitude. The land owner did not build tall buildings on his land, but used the same for residences, the tillage of the soil, or the sale of small wares. Society was less complicated and there were neither sewers, gas pipes, water pipes, electric wires or conduits. Communication was slow and difficult, and the surface of the highway was sufficient for all public purposes. To-day such a surface use is insufficient.

Chief Justice Beasley said in *State* v. *Laverack* (1870), 34 *N. J. L.* 201 (at *p.* 206) : "The right of the public in a highway consists in the privilege of passage and such privileges as are annexed as incidents by usage or custom, as the right to make sewers and drains, and lay gas and water pipes. These subordinate privileges are entirely consistent with the primary use of the highway, and are no detriment to the land owner. But I am not aware of any case in which it has been held that the public has any right in a highway, which is incongruous with the purpose for which it was originally created, and which at the same time is injurious to the proprietor of the soil."

In *Nicoll* v. *Telephone Co.*, 62 *N. J. L.* 733, Mr. Justice Dixon said : "The right of a telephone company to erect a telephone line within the limits of a public highway, upon land the fee of which is owned by private persons, imposes an additional servitude upon the fee, and can be acquired,

against the consent of such persons, only through the power of eminent domain." In the Supreme Court, Justices Depue, Van Syckle and Garrison reached an opposite result.

"The use of the telephone and the telegraph in so far as a public convenience and necessity that property may be condemned therefor under the power of eminent domain, but whether the erection of a telegraph or telephone poles and lines upon a highway is an additional burden for which the owner of the fee is entitled to compensation is a vexed question of no little importance. Several of the courts have held such abuse not an additional burden, and have refused to allow the adjoining owner compensation therefor. * * * On the other hand, it is held, by the Supreme Court of Illinois that the use of a highway for telephone or telegraph poles and lines is similar in character to its use for a steam railroad, and constitutes an additional servitude for which the owner of the fee is entitled to compensation. * * * If one or two posts and wires may be placed in front of a man's property, may not a dozen be placed there? Indeed, in most of our cities the poles and wires are already so thick as to seriously interfere with the light and air and to greatly impair the chances of saving a building in case of fire. Has the owner no remedy in such a case? Where shall the line be drawn? * * * The abutting owner is specially benefited by drains and sewer and by gas mains, but this is not true of telegraph lines; and so far from facilitating travel they rather impede it and interfere with the ordinary use of the way. The truth is, the opposite doctrine is founded upon expediency rather than upon principle. Under either view, however, a telephone or telegraph pole may be so placed, at least when unauthorized, as to constitute a nuisance." *Elliott, Roads and Streets* (*4th ed.*), §§ 893, 894.

Vice-Chancellor Backes in *Dolton* v. *Public Service Electric Co.*, 83 *N. J. Eq.* 550, said that the determination of the right of a public utility corporation to place conduits within the street without the consent of the abutting property owners was a question of great importance which had never been decided by this court.

The rule laid down in 29 *Corp. Jur.* 545, 546, is as follows: "The general easement in the public, acquired by the location of a highway, extends to the limits of the highway as located, and consists in the privilege of passage, with the powers and privileges which are incident to such a right, such as the right to construct and maintain a safe and convenient roadway, to make sewers and drains, lay gas and water pipes, make reservoirs, and to any other acts which tend to facilitate travel, and are in furtherance of the purpose for which the easement was acquired. But the public have no right in a highway which is incongruous with the purpose for which it was originally created, and which at the same time is injurious to the proprietor of the soil."

It is apparent from the foregoing that by the great weight of American authority the placement, under the highway, of sewers, drains, gas pipes and water pipes is regarded as entirely consistent with the primary use of the highway and of no detriment to the abutting land owners, and further that such conveniences may be placed, without compensation, because they facilitate travel and are in furtherance of the purpose for which the easement was anciently acquired by the public. On the other hand, it is settled by the great weight of authority that wires and poles, whether used for telephone, telegraph or electric light lines, other than for street lighting, are subject to another and different rule, since they are obstructions and interfere with the public right of passage over the highways, and are a detriment to the proprietor of the soil. In our cities, the telephone, telegraph and electric light wires, not only endangered the safety of the traveling public but were unsightly and in case of storms a menace to the life, property and safety of the abutting owner. The subsurface placement of wire conduits has proved to be of great public and private advantage.

When sewers were first laid in our streets they were not used by all of the abutting land owners. Until their use became compulsory it was far from general. That they do facilitate travel upon the highways and are a benefit to the abutting owners goes without saying, but when Chief Justice

Beasley wrote the opinion of the court in *State* v. *Laverack,* *supra,* neither sewers, gas pipes or water pipes were in general use, and the telephone and the electric light were unknown. Privies and wells were still used, and only the well-to-do used illuminating gas. The principles of law which he there declared, however, are controlling to-day. There can be no distinction in utility or convenience between the conduits which bring gas, water and electricity either for light, power or the transmitting of telephone and telegraph mesages.

The telephone was not patented by Alexander Graham Bell until six years after the decision of this court in the Laverack case. The first permanent trans-Atlantic cable laid in 1866 had only been in use four years. Our modern network of wires for the transmission of fact was unknown and undreamed of, yet the public easement includes within its borders some new uses which public necessity may demand. The highway may be used by automobiles, horse and trolley cars. *Hinchman* v. *Paterson Horse Railroad Co.,* 17 *N. J. Eq.* 75; *Halsey* v. *Rapid Transit Street Railway Co.,* 47 *Id.* 380. There is no distinction in utility and benefit between pipes to carry gas and water, and conduits to carry wires through which electric energy is transmitted.

In 1878, the telephone subscribers in London were less than a dozen. To-day there are twenty million telephones in the United States. The wires leading to these instruments must, in congested districts, be placed under the surface of the highway and when so placed travel is facilitated; the abutting owner is benefited, the fire hazard is reduced, and there is a furtherance of the use for which the public easement was acquired. Tall buildings, modern business and the temper of our people require that the avenues of communication be kept open. Just as the abutting land owner was served and benefited by sewers and drains and by pipes, which brought pure water to his house and by illuminating gas with all of its advantages for heating and lighting, he is now benefited by conduits which bring electric current and the wires over which, by convenient devices, spoken messages may be carried to the business man, neighbor, friend or relative with

speed and certainty. Conduits for the carrying of wires and cables have become annexed as incidents by usage and customs to the rights of the public in the highway and, instead of being a burden, are of incalculable benefit to the adjoining land owners.

The judgment below is affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DONGES, VAN BUSKIRK, HETFIELD, DEAR, WELLS, KERNEY, JJ. 13.

*For reversal*—KAYS, J. 1.