## 823 BROAD STREET, A CORPORATION, v. MANNY MARCUS AND MAX GOLDMAN.

Decided January 9, 1939.

For the plaintiff, *Milton M. Unger* and *Lum, Tamblyn & Fairlie* (by *Ralph E. Lum* and *J. Raymond Berry*, of counsel).

JOSEPH L. SMITH, C. C. J.   This is a motion for a direction of a verdict of guilty of trespass in favor of the plaintiff and against the two defendants in this ejectment suit, wherein the plaintiff is the owner of property commonly known as 823 Broad street, Newark, New Jersey, and seeks the eject-ment of the two defendants who have maintained and are at present maintaining a newsstand on the sidewalk directly in front of the said premises.

There has been introduced in the case testimony and docu-mentary evidence and historical evidence which tends to show the history of the State of New Jersey, particularly of the northern part of New Jersey and bearing specifically upon the founding of the city of Newark by a group of New Eng-landers under the leadership of Robert Treat; through nego-tiations and arrangements with Phillip Carteret, then gover-

nor of New Jersey, for a settlement on the western bank of the Passaic river; their negotiations with the Hackensack Indians and their acquisition from the Indians of a bill of sale covering premises now comprising the city of Newark; their settlement upon the premises and the obtaining of patents from Governor Carteret and his successors, and those administering his estate.

From all of this it appears that the premises in question were originally a part of a lot set aside as burial ground.

The present plaintiff acquired its title to premises No. 823 Broad street, Newark, New Jersey, directly from Helen Grand. This deed from the said Grand to the plaintiff, describes the property as beginning at the intersection of the westerly line of Broad street with the southerly line of Branford Place; in other words, the description covers up to the building line of the two streets, Broad street and Branford Place. The evidence shows, without dispute, an unbroken chain of title of record beginning in 1811 to date. Nowhere in the chain of title, either in conveyances of record since 1811, or prior thereto, as shown by historical research, is there any express reservation or exception from conveyance of the property from the building line to the middle of the highway, namely, Broad street, and it is a well established rule that when, in a conveyance of land, the premises are described as beginning at a point in the side of a street, and as running thence along such side, the street, to its center, will be held by legal presumption to be embraced, and under ordinary conditions nothing short of express words of exclusion will prevent the street in front of the premises conveyed from passing. This was the rule laid down in 1877 by Chief Justice Beasley, in *Salter* v. *Jonas,* 39 *N. J. L.* 469. In that case, as in the present, the lot in question was described as running along the side line of the street. Holding that half of the street passed with the lot that was thus bounded on its side, Chief Justice Beasley adopted the reasoning of previous cases, that the paramount intent of the parties as disclosed from the whole scope of the conveyance, and the nature of the property granted, should be the controlling rule.

The late Chief Justice further said (at *p.* 472):

"And this doctrine, although it cannot be said to be sustained by the greatest number of decisions, is, I think, the one that ought to be adopted in this state. In our practice, in the conveyance of lots bounded by streets, the prevailing belief is, that the street to its center is conveyed with the lot. Among the mass of the people it is undoubtedly supposed that the street belongs, as an appurtenance, to the contiguous property, and that the title to the latter carries with it a title to the former. This belief is so natural that it would not be easily eradicated. As a general practice, it would seem preposterous to sever the ownership to these several parcels of property. Under ordinary circumstances, the thread of land constituting the street is of great value to the contiguous lots, and it is of no value separated from them. It would rarely occur that the vendee of a city lot would be willing to take it separated in ownership from the street, and it would as rarely occur that a vendor would desire to make such severance. In my own experience, I have never known such an intention to exist, and it is safe to say that whenever it does exist, the conditions of the case are peculiar.

"And it is the very general notion that these two parcels of property are inseparably united, and pass as a whole by force of an ordinary conveyance, that accounts for the absence of any settled formula in general use for the description of city lots in a transfer of their title. Upon an examination of such conveyances, it would, I am satisfied, be disclosed, but the utmost laxity in this respect prevails. The property conveyed is indiscriminately described as going to the street and running along it, or as going to one side of such street and thence running along such side. Such discriminations are not intentional, the purpose being to convey all the interest that the seller has in the property and in its belongings, and the mode of accomplishing this purpose is not the subject of attention, the street lot, as I have said, being regarded as a mere adjunct of the property sold, and worthless for any other use."

Similarly in *Hinchman et al.* v. *The Paterson Horse Railroad Co.*, 17 *N. J. Eq.* 75, Chancellor Green, in 1864 held that:

"The established inference of law is, that a conveyance of land bounded on a public highway carries with it the fee to the center of the road, as part and parcel of the grant; and the grantee has the exclusive right to the soil subject to the right-of-way."

The decision of the court in *Starr* v. *Camden and Atlantic Railroad Co.* (1854), 24 *N. J. L.* 592, is to the same effect.

It is also the established law that the effect of the dedication of a portion of property as a street gives to the public merely an easement, that is, the right of passage and the owner still has all rights of ownership which are not inconsistent with the public right of passage. *Laurel Garden Corp.* v. *New Jersey Bell Telephone Co.*, 109 *N. J. L.* 171; 160 *Atl. Rep.* 549.

This public easement, or right of passage, may vary in its extent from time to time and under various circumstances. Originally, no doubt such right of passage was confined to walking or riding, horseback or by such other means as was common, but to-day under our present circumstances, this right of easement has been extended to cover sewers, drains, gas and water pipes, telephone and telegraph wires, under and above ground, trolley and railroad tracks, &c. *State* v. *Laverack*, 34 *N. J. L.* 201; *Nicoll* v. *Telephone Co.*, 62 *Id.* 733; 42 *Atl. Rep.* 583.

However, under no circumstances can the maintenance and operation of a newsstand on the sidewalk in front of the property of the plaintiff, be considered to be an exercise of public easement or public right of passage over the property of the plaintiff dedicated to the use of the public.

The court, therefore, directs the jury to bring in a verdict of guilty against the defendants and for possession in favor of the plaintiff of the premises described in the complaint, with nominal damages as requested for the plaintiff in the sum of six cents.