## COBURN v. THE NEW TELEPHONE COMPANY.

[No. 18,853. Filed February 1, 1901.]

MUNICIPAL CORPORATIONS.— *Streets.— Additional Servitude.— Telephones.—Injunction.*—The construction of a trench in a sidewalk three feet from the abutter's property line as a conduit for telephone cables and wires to be used by the public as a means of communication is not a use of the street inconsistent with the dedication thereof to the public use, and an action cannot be maintained by an abutting property owner to enjoin the prosecution of such work. *pp. 91-97.*

SAME.—*Streets.—Construction of Trench for Telephone Conduits.— Municipal Authority.—Complaint.*—A complaint by an abutting property owner to enjoin a telephone company from constructing a trench in the sidewalk to be used as a conduit for telephone wires, alleging that the company was unlawfully digging the trench, is not sufficient to negative municipal authority to construct the trench. *pp. 97-99.*

From the Marion Circuit Court.   *Affirmed.*

*J. Coburn* and *D. W. Howe,* for appellant.
*L. C. Walker,* for appellee.

HADLEY, J.—The appellant is the owner of a lot of land in the city of Indianapolis abutting on Delaware street forty-five feet and on New York street 125 feet.   Both of these streets are public streets of said city, each ninety feet wide, and twenty-five feet on each side of New York street has been set apart and improved as sidewalks.   Appellant also owns, subject to the public easement thereon for street purposes, so much of each of said public streets as lies opposite and adjacent to the front and side of his said lot to the middle of each of said streets.   At present his lot has no improvements thereon, but appellant contemplates and intends to erect a large business block on it, with cellars, basement, and vaults extending under the sidewalk in front and at the side of his said lot.   The appellee, a telephone company, organized and doing business under the laws of this State, without leave or license from the appellant, and without having taken any steps to condemn or appropriate any portion of the ground covered by said streets in front and alongside of appellant's lot, or to assess appellant's damages therefor, and without notice to appellant, did, on the 12th day of July, 1898, by its officers, agents, and employes, wrongfully dig a trench, about three feet wide and five feet deep, in the sidewalk, about three feet from the south line of said New York street, along the entire portion thereof extending and abutting upon the appellant's said lot, and said company is engaged in cementing the same and placing pipes therein, and as soon as the said trench shall be completed, said company threatens to, and will, if not restrained, put in wires and use the same as a conduit of telephone wires permanently.   The deposit of pipes, cement, and wires will be a complete obstruction of the use of said grounds under said street by the appellant; will per-

manently destroy his rights therein; will deprive him of the use of the same forever, and will greatly impair the value of his property, inflicting upon him' irreparable loss and injury, which cannot be accurately estimated, or compensated in damages. Appellant discovered the foregoing proceedings and acts of the appellee July 12, 1898, and instituted this suit on the next day thereafter. The foregoing facts are shown by the complaint, and the appellant asked for a temporary order enjoining the further prosecution of the said work by the appellee, and that on the final hearing he might have a permanent injunction. The appellee demurred to the complaint for the want of sufficient facts, and its demurrer was sustained. This ruling is assigned for error.

The principal ground upon which appellant seeks a reversal is that the city had no power to dig or to authorize appellee to dig the trench complained of, until the damages resulting to appellant had first been assessed and tendered. He says: "We concede that an abutting lot owner has no legal right to complain of the erection of telephone poles, or the digging of telephone trenches in the street, so long as this is no special injury to him; in other words that if there is no injury to him beyond the interference with his abstract right of property in the street itself, such as he holds in common with all other abutting lot owners, he has no legal grounds of complaint." His right of recovery then must rest upon some special injury to his absolute property right which he holds in the street as an abutter, and which he has the right to defend against the city or its licensee.

Under many decisions of this court the fee owner of an abutting lot whose grantor dedicated the public easement in connection with the platting of the lot, owns also the fee in the land to the center of the street, subject to the easement of the public to make such uses of the street as were reasonably contemplated in the dedication, grant, or condemnation. *Terre Haute, etc., R. Co.* v. *Scott,* 74 Ind. 29, and

cases cited; *Chicago, etc., R. Co.* v. *Whiting, etc., St. R. Co.,* 139 Ind. 297, 301, 47 Am. St. 264.

The appellant must therefore show that the alleged occupation of the sidewalk with trench and pipes as a conduit for telephone wires is a new servitude not within the contemplated uses of the street, and therefore an additional burden upon his fee for which he is entitled to recompense. The fact that the entry complained of is upon and under the sidewalk rather than under the roadway makes no difference, since a street is a street from property line to property line, not only the entire surface, but also so much of the depth as is or can be fairly used for the ordinary purpose of a street, each part equally with every other. *State* v. *Berdetta,* 73 Ind. 185, 38 Am. Rep. 117; Elliott on Roads and Streets (2nd ed.) §§17, 20.

Neither can it be said, in the absence of a grant, or a general usage equivalent to a municipal license, that the fee owner has any greater or different property right in that part of the street used as a sidewalk for foot travelers than in that part used as a roadway for vehicles. He may, we think, excavate and improve under the surface from his lot line to the center line of the street, or any part of it, and use his fee property as he pleases—Elliott on Roads and Streets (2nd ed.) §690, and cases cited—so long as his use does not impede or interfere with the superior right of the public to use the ground for purposes contemplated by the easement grant. Such fee owner, however, must know that the estate he holds within the limits of the streets is servient, and his property right therein qualified, and that any expenditure of labor or money in improvements will neither oust, nor impair the right of the municipality to take possession, for a proper purpose, at any time the public interests require. And in yielding possession, under such circumstances, to the superior right of the public, he parts with nothing he owns, and the loosing in itself is no special injury, nor a taking of property without compensation.

*Magee* v. *Overshiner,* 150 Ind. 127, 40 L. R. A. 370, 65 Am. St. 358; *Julia Bldg. Assn.* v. *Bell Tel. Co.,* 13 Mo. App. 477; *Davis* v. *City of Clinton,* 50 Iowa 585; *Julia Bldg. Assn.* v. *Bell Tel. Co.,* 88 Mo. 258; Dillon's Munic. Corp. (4th ed.) §699.

Dillon in the section quoted says: "If the fee of the street is in the municipality in trust for the public uses, as it frequently is, it extends to the whole street, including the sidewalk; and the adjoining lot owner has, it seems clear, no absolute right, as against the public or the municipality charged with the control of the streets, to appropriate them to this use. And in our judgment the lot owner's right is not substantially greater even if he has the fee in the street. In either case, to recognize such a right except subject to municipal regulation would be inconsistent with the public rights, which are paramount in the whole street to the extent of all legitimate street uses and servitudes required, or which may be required, for the public benefit and convenience. The lot owner's rights are subject to the paramount rights of the public; and the rights of the public are not limited to a mere right of way, but extend, as we have shown, to all beneficial legitimate street uses, as the public good or convenience may from time to time require. The use of the streets for sewers, tunneling, public cisterns, gaspipes, water pipes, and other improvements, might be seriously affected by the recognition of a right in the abutter to make at pleasure openings in, or even under the sidewalk or street, except subject to reasonable municipal regulation."

In *Julia Bldg. Assn.* v. *Bell Tel. Co.,* 88 Mo. 258, at page 273 it is said: "I think it may be safely affirmed that all the authorities, to which we have been cited by counsel on both sides of this case, agree, that when the public acquires a street, either by condemnation, grant or dedication, that it may be applied to all uses consistent with, and not subversive of the proper uses of a street, and not inconsistent

with the uses contemplated in the dedication, grant or condemnation, and that it is only when the street is subjected to a new servitude, inconsistent with and subversive of its use as a street, that the abutting owner can complain."

The question then arises, is the construction of a sub-surface trench in a sidewalk, three feet wide and five feet deep and three feet from the abutter's lot line, for the purpose of permanently maintaining such trench as a conduit for telephone cables and wires to be used by the city public in intercommunication by electricity, such a use of the street as is consistent with the contemplated purpose of the dedication? In principle the question has been recently answered in the affirmative by this court in *Magee* v. *Overshiner,* 150 Ind. 127. The question in that case was whether the setting of telephone poles in the curb line of a street was a proper public use of the street, or a new and additional servitude upon the fee for which the owner was entitled to compensation; and the nature and extent of the public easement in municipal highways and the expansive and growing character of the easement in keeping pace with scientific discovery and the increase of population are there thoughtfully reviewed, and many of the later cases collated. The general doctrine of these cases is that in locating, marking, and dedicating streets, in plats of land for urban residences, the purpose of the dedication, in the absence of controlling language, is conclusively presumed to be for the accommodation of public travel, traffic, and communication. Anything which reasonably facilitates these ends is therefore consistent with the dedication. In sparsely settled towns and cities public necessity requires but little of the servient owner beyond the right of unobstructed passage over the street, but as cities become populous and the streets crowded with traveling footmen and vehicles, public necessity increases with the multitude, and whenever the necessity exists, any use of the street by reasonable structures and devices, above or below the surface, which will

enable the citizens to communicate without actual travel upon the street, and which does not materially obstruct the ingress and egress and light and air to abutting property, is within the contemplated purpose of the dedication, and not a new burden upon the fee. A reason for this doctrine is given in *Julia Bldg. Assn.* v. *Bell Tel. Co.,* 88 Mo. 258, at page 268 in these words: "These streets are required by the public to promote trade and facilitate communication in the daily transactions of business between the citizens of one part of the city with those of another, as well as to accommodate the public at large in these respects. If a citizen living or doing business on one end of Sixth street wishes to communicate with a citizen living and doing business on the other end, or at any intermediate point, he is entitled to use the street, either on foot, on horseback, or in a carriage, or other vehicle in bearing his message. The defendants in this case propose to use the street by making the telephone poles and wires the messenger to bear such communications instantaneously and with more dispatch than any of the above methods, or any other known method of bearing oral communications. Not only would such communications be borne with more dispatch, but, to the extent of the number of communications daily transmitted by it, the street would be relieved of that number of footmen, horsemen or carriages. If a thousand messages were daily transmitted by means of telephone poles, wires and other appliances used in telephoning, the street through these means would serve the same purpose, which would otherwise require its use either by a thousand footmen, horsemen or carriages to effectuate the same purpose. In this view of it the erection of telephone poles and wires for transmission of oral messages, so far from imposing a new and additional servitude would, to the extent of each message transmitted, relieve the street of a servitude or use by a footman, horseman or carriage."

A distinguished author says: "When land is taken or

dedicated for a town street, it is unquestionably appropriated for all the ordinary purposes of a town street; not merely the purposes to which such streets were formerly applied, but those demanded by new improvements and new wants." Cooley's Const. Lim. p. 556. If the setting of poles, and the stringing thereon of a body of telephone wires overhead, in a street, which at best is some obstruction to travel and to the manipulation of apparatus for the extinguishing of fires, is a legitimate exercise of the public easement, there is stronger reason for asserting that the laying of cables and wires under the surface for a like purpose, with municipal authority, is a proper use of the street, and for which, if skilfully performed, the fee owner has no ground of complaint.

As a second proposition appellant urges that in the absence from his complaint of any averment of the city's authority to the defendant to construct the trench, and the presence of an averment that the act was unlawfully done, the complaint was sufficient to put the defendant to its answer of authority.

The complaint alleges that the defendant is a corporation organized and doing business under and by virtue of the laws of the State of Indiana; that New York street is a public street of the city of Indianapolis; that the plaintiff is the owner of an abutting lot and the owner of the fee in New York street from his lot line to the center of the street subject to the public easement; that the defendant without license from the plaintiff, and without having taken any proceeding to condemn any portion of the ground covered by said street, or to assess the plaintiff's damages, did on July 12, 1898, by its officers and agents *wrongfully* dig a trench, etc., upon the sidewalk, extending along and abutting on plaintiff's lot, and is now engaged in cementing the same and placing pipes therein, and threatens that, as soon as the trench is completed, it will put in wires and use the

same permanently as a conduit for telephone wires. These averments show that the defendant is a *quasi* public corporation doing a telephone business, with power of condemnation, and is engaged in constructing a conduit for the permanent maintenance of telephone wires in the streets of Indianapolis and upon the sidewalk of the plaintiff. They also show that the plaintiff, is the servient owner of the sidewalk, and that the city, the dominant owner, may do, or authorize the defendant corporation to do, the very things complained of without condemnation or consent of the plaintiff. All reasonable presumptions must be indulged in favor of the right action of the defendant as well as against the pleader. As was said by this court in *Brashear* v. *City of Madison*, 142 Ind. 685, at page 694: "Under our code, the burden rests upon the pleader to state in a plain and concise manner, the facts requiring the relief demanded and to be excused from this duty, he must allege that such facts are beyond his reach, and not within his knowledge. It is a familiar rule that pleadings are to be construed most strongly against the pleader, and that if alleged conduct is reasonably susceptible of honest and lawful construction, that construction shall be given it."

It is asserted that the word "*unlawfully*" dig, etc., is sufficient to negative municipal authority. This question is ruled by *Palmer* v. *Logansport, etc., Co.*, 108 Ind. 137. In the case referred to, Palmer being the fee owner of a part of a public highway, sued to enjoin the defendant, a gravel road company, from entering upon and taking possession of the highway, and from erecting thereon toll-gates, etc. It is alleged in the complaint that the act of taking possession of the highway and erecting toll-gates thereon "was without authority of law or unlawful." This court says on page 142: "This, it will be observed, is not the statement of any fact, but is merely the pleader's conclusion from facts which are not stated and not apparent. * * * Where, therefore, as here, it appears, or is shown,

that a gravel-road corporation has entered upon and taken possession of a public highway, it will be presumed, in the absence of any averment to the contrary, that such possession is with the consent of the proper county board, and is, therefore, authorized by law. If it were the fact, that appellee's entry upon and possession of the Kokomo road were without the consent of the board of commissioners of Cass county, the fact should have been averred by appellant, and the conclusion would have followed, without an averment, that such entry and possession were unauthorized by law, or unlawful. The civil code requires, and our decisions enforce the rule, that the facts must be pleaded, and not legal conclusions."

In this case, if the defendant's entry upon the sidewalk was by authority of the city, it was lawful irrespective of the consent of the plaintiff. The plaintiff's right to object, therefore, was qualified and not absolute, and to exhibit a good cause for injunction it was incumbent upon him to show that the qualifying right had not been exercised.

We recognize and still adhere to the rule laid down in *Cleveland, etc., R. Co.* v. *Berry*, 152 Ind. 607, that a general allegation that an act causing the injury complained of was "negligently" or "unlawfully" done, is sufficient to withstand a demurrer. The reason and limits of the rule are there clearly and satisfactorily stated. But the Berry case belongs to a class clearly distinguishable from the case at bar.

Judgment affirmed.