[L. A. No. 2074. Department One.—July 2, 1908.]

## W. GEORGE J. S. BENTLEY, Respondent, v. BURT G.. HURLBURT, Appellant.

## B. G. HURLBURT, Appellant, v. W. GEORGE J. S. BENT- LEY, Respondent.

CONSTRUCTION OF STATUTES—IMPOSITION OF PENALTY—CONTRACT IN
    VIOLATION OF PROHIBITION.—As a general rule, the imposition by
    statute of a penalty implies a prohibition of the act to which the·
    penalty is attached, and no recovery can be had on a contract
    made in violation of the statutory prohibition. The rule is, how-
    ever, not without exceptions, and the statute must be examined as·
    a whole to ascertain whether it intended that a contract in con-
    travention of it should be void or not.

RECORDING OF MAPS OF SUBDIVISION OF LAND—ACT OF MARCH 9, 1893—
    SALE OF LOTS BEFORE RECORDING AND AFTER FILING.—Sections 3:
    and 4 of the act of March 9, 1893, as amended in 1901 (Stats. 1893,
    p. 96; 1901, p. 288), requiring the recording of maps of subdivisions:
    of lands into small lots for purposes of sale, and providing a penalty
    for selling or offering for sale such lots before such maps are filed\
    and recorded, when properly construed only prohibits the sale or·
    offering for sale of the certain classes of lots specified therein·
    before a map made, acknowledged, certified, and indorsed as·
    specified in the act shall have been presented to the recorder to be·
    recorded. The proprietor of the land has then done all that the law
    imposes upon him, and a delay of the recorder in performing the·
    ministerial duty of posting the map in the book of maps will not
    affect the right of the owner to make a sale, or render a sale crim-
    inal, which was made after the map was presented to the recorder·
    and before it was pasted in the book of maps.

ID.—APPROVAL BY COUNTY SURVEYOR NOT REQUIRED—DUTY OF RECORDER.—The act does not authorize the recorder to make an approval by the county surveyor a condition precedent to the receiving of the map; and where the map is in the form required by the act it is the recorder's duty to receive and record it.

ID.—SUBMISSION OF MAP TO SURVEYOR NOT A WITHDRAWAL FROM RECORD.—Where a map, sufficient in form, is presented by the owner to the recorder for record, the fact that the owner subsequently, at the request of the recorder, took the map to the county surveyor did not constitute a withdrawal by him of the map; and its subsequent recording after its return by the surveyor must be regarded as having been made pursuant to its original presentation for record.

VENDOR AND VENDEE—ACTION FOR INSTALLMENTS OF PURCHASE PRICE.—The fact that a vendor under a contract for the sale of land has parted with his title is no defense to an action by him against the vendee on the contract of sale to recover intermediate installments of the purchase price. When the final installment falls due, it will for the first time become important to ascertain whether the vendor is able to comply with his agreement to convey a good title.

NEW TRIAL—EXCESSIVE JUDGMENT—WAIVER OF EXCESS—DENIAL OF MOTION.—Where pending a defendant's motion for a new trial the plaintiff files a written waiver of an excessive amount included in the judgment in his favor, the court may, by an order unconditional in form, recite such waiver and deny the motion at once.

ID.—AFFIDAVITS USED ON MOTION—BILL OF EXCEPTIONS.—Affidavits included in the transcript, purporting to show newly discovered evidence and to have been used on a motion for a new trial, cannot be considered on an appeal from an order denying the motion unless authenticated by being embodied in a bill of exceptions or otherwise as required by rule XXIX of the supreme court.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. W. P. James, Judge.

The facts are stated in the opinion of the court.

O. B. Carter, for Appellant.

Tanner, Taft & Odell, for Respondent.

SLOSS, J.—The two above-entitled actions were, by order of court, consolidated and tried together. Bentley *v.* Hurlburt is an action to recover installments claimed to be due on

twenty-five contracts for the sale by Bentley to Hurlburt of lots of land in the city of Santa Monica, Los Angeles County. The complaint is in twenty-five counts or causes of action. The first alleges that on June 19, 1905, the plaintiff sold to defendant lot 4 in block 4 of the Fountain Glen Tract, and the defendant agreed to pay therefor the sum of three hundred and fifty dollars, as follows: Ten dollars at the date of the contract, ten dollars on the nineteenth day of July, 1905, and ten dollars on the nineteenth day of each month thereafter until the whole was paid, with interest on deferred payments. It is alleged that the defendant paid the installments for June, July, August, and September, 1905, but had failed and refused to pay any further amounts of principal or interest. The plaintiff alleges performance of all conditions of the contract to be performed by him to the time of commencing the action. Each of the other counts is in the same form, except that different lots of the same tract and different amounts of purchase price are set forth. The complaint was filed on February 24, 1906, and prayed judgment for $1,532.25, together with such further sums as might accrue under said contracts before entry of judgment.

The answer denies that plaintiff sold to defendant any of the lots, denies that any contract was ever entered into between the parties for the sale of any of such lots, and denies that defendant paid to plaintiff any sums of money, pursuant to the terms of any contract for such sale. The answer also contains a counterclaim, in the form of a common count for money had and received by plaintiff to the defendant's use, in the amount of ten hundred and ninety dollars.

The action of Hurlburt *v.* Bentley was in two counts, one setting forth the same cause of action as that contained in the counterclaim just mentioned, and the other a similar claim for one hundred and eighty dollars, alleged to have been had and received by plaintiff to the use of Mrs. R. E. Kempton, said claim having been assigned to Hurlburt. Bentley's answer to this complaint consisted of denials of the material allegations, and a counterclaim for the sums involved in the first action. There was a further counterclaim for five hundred and ten dollars, alleged to be due from Mrs. R. E. Kempton to Bentley on contracts similar to those set up in the action of Bentley *v.* Hurlburt.

The findings of the court were in favor of Bentley, and he recovered judgment for $2,648.10. From the judgment and an order denying a motion for new trial Hurlburt appeals.

It is not disputed that the parties did, in fact, sign and deliver writings purporting to bind them to the terms of the contracts set up in the original complaint. Nor is there any question (except in a particular to be mentioned) regarding the amount paid on these contracts or the amounts due thereon at the time the judgment was entered. The appellant's position is that the contracts were totally void, and that, as a consequence, Bentley cannot enforce them, while, on the contrary, the amounts paid on such void contracts by the proposed vendee may be recovered by him. It is this right to recover payments already made that is asserted in the counterclaim in the first action and the complaint in the second.

The claim of invalidity is based on the provisions of an act entitled "An act requiring the recording of maps of cities, towns, additions to cities or towns, or subdivisions of lands into small lots or tracts for the purposes of sale, and providing a penalty for the selling or offering for sale any lots or tracts in cities, towns, additions to cities, towns, subdivisions, or additions thereto, before such maps are filed and recorded," approved March 9, 1893. (Stats. 1893, p. 96.) The act reads as follows:—

"Section 1. Whenever any city, town, or subdivision of land into lots, or any addition to any city, town, or such subdivision, shall be laid out into lots for the purposes of sale, the proprietor or proprietors thereof shall cause to be made out an accurate map or plat thereof, particularly setting forth and describing:

"First—All the parcels of ground within such city, town, addition, or subdivision, reserved for public purposes, by their boundaries, courses, and extent, whether they be intended for avenues, streets, lanes, alleys, courts, commons, or other public uses; and,

"Second—All lots intended for sale, either by number or letter, and their precise length and width.

"Sec. 2. Such map or plat shall be acknowledged by the proprietor, or if any incorporated company, by the chief officer thereof, before some officer authorized by law to take the acknowledgment of conveyances of real estate.

"Sec. 3. The map or plat so made, acknowledged, and certified, shall be filed in the office of the county recorder of the county in which the city, town, addition, or subdivision is situated.

"Sec. 4. Every person who sells, or offers for sale, any lot within any city, town, subdivision, or addition, before the map or plat thereof is made out, acknowledged, filed, as herein provided, is guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than twenty-five dollars, and not more than five hundred dollars, or by imprisonment in the county jail not to exceed six months, or both such fine and imprisonment."

In 1901 section 3 of the act was amended to read as follows:—

"Section 3. The map or plat so made, acknowledged, and certified shall be presented to the governing body having control of the streets, roads, alleys, and highways in the territory shown on the map or plat, and said governing body shall indorse thereon which streets, roads, alleys, and highways, offered by said map or plat, they accept on behalf of the public, and thereupon such streets, roads, alleys, and highways, only as have been thus accepted, shall be and become dedicated to public use. When so indorsed, and not before, said map or plat shall be recorded in the office of the county recorder of the county in which the city, town, addition, or subdivision is situated, in a book kept for that purpose. The map or plat shall be no more than thirty-six inches by thirty-six inches in size, and shall be drawn in all details clearly and legibly, and if not so drawn may be refused by the county recorder. When such map or plat is presented to be recorded the county recorder shall paste the same securely in a book of maps, and it shall then be deemed to have been recorded under the provisions of this act." (Stats. 1901, p. 288.)

The contention of the appellant is that the sale of the lots in question was made in advance of the filing or recording of a map or plat thereof, and that, as such sale was an act to which the law affixed a penalty, it was prohibited and void, and could not be the basis of an action to recover money agreed to be paid under the contract of sale. That the imposition by statute of a penalty implies a prohibition of the act to which the penalty is attached, and that no recovery can be

had on a contract made in violation of statutory prohibition, is doubtless the general rule. (Civ. Code, sec. 1667; *Berka* v. *Woodward,* 125 Cal. 119, 127, [73 Am. St. Rep. 31, 57 Pac. 777], and cases cited.) The rule is, however, not without exceptions. In *Harris* v. *Runnels,* 12 How. (U. S.) 79, the supreme court of the United States said, "Before the rule can be applied in any case of a statute prohibiting or enjoining things to be done, with a prohibition and a penalty, or a penalty only for doing a thing which it forbids, the statute must be examined as a whole, to find out whether the makers of it meant that a contract in contravention of it should be void, or that it was not to be so." While the statute here under consideration has not been construed by this court, statutes substantially similar have been brought for interpretation before the courts of other states. In a majority of the cases it has been held that a contract of sale made in violation of such a statute was not void, and that the vendor could recover the purchase price in an action on the contract. (*Strong* v. *Darling,* 9 Ohio, 201; *Bemis* v. *Becker,* 1 Kan. 226; *Pangborn* v. *Westlake,* 36 Iowa, 546.) The contrary was decided in *Downing* v. *Ringer,* 7 Mo. 585.

It will not be necessary for us to choose between these opposing views, for the reason that we are satisfied that the court below was justified by the evidence in concluding that Bentley had substantially complied with the statute. The facts, as testified to by respondent's witnesses, were these: A map of the Fountain Glen Tract, in which the lots sold were situated, was acknowledged by Bentley on the twenty-seventh or the twenty-ninth day of May, 1905. He took the map to the city engineer, who, after referring it to the city council, returned it to Bentley on June 6th. On June 7th or 8th Bentley went to the office of the county recorder and handed the map and fifty cents to the recorder. The latter looked at the map and told Bentley to take it to the county surveyor's office and leave the fifty cents. Bentley did so. The county surveyor sent the map to the city surveyor of Santa Monica, with a note requiring some corrections. These were made and the map returned to the county surveyor, who, on July 3, 1905, delivered it to the recorder to be recorded. The sale of the lots in question was made on June 19th, after Bentley had tendered the map, with the fee for recording, to the

recorder, but before the map, as corrected, had been returned to the recorder's office.

As above stated, we think that these facts showed a compliance, on Bentley's part, with the provisions of the law. Section 3 of the act, as originally enacted, required merely that the map be "filed" in the recorder's office. Under the amended section 3 it must be "recorded," and it is provided that it shall be deemed to be recorded when it has been, by the recorder, pasted securely in the book of maps. Section 4 of the act, the section imposing the penalty, does not use the word "recorded." It defines as a misdemeanor the selling or offering for sale of lots "before the map or plat thereof is made out, acknowledged, filed." Under the original act the proprietor of the land had unquestionably done all that was required as a prerequisite to selling lots when he had tendered a proper map, together with the legal fee, to the recorder for filing. The amendment to section 3, requiring a certain method of recording, did not enlarge the terms of section 4 which made it a misdemeanor to sell, or offer for sale, before the map was "filed." The new section 3 refers to two acts—the presentation of the map for recording and the pasting in a book. The former, which is to be performed by the party who seeks to have the map recorded, may well be called a "filing." The latter, which is the act of the recorder, is by the act itself defined as a recording. We think the reasonable construction of the act, as amended, is that it prohibits the sale or offering for sale of certain classes of lots before a map, made, acknowledged, certified, and indorsed as specified in the law, shall have been presented to the recorder to be recorded. The "proprietor" of the land has then done all that the law imposes upon him, and a delay on the part of the recorder in performing the ministerial duty of pasting the map in a book will not affect the right of the owner to make a sale, or render such sale criminal.

Here the owner, Bentley, had so presented the map to be recorder. The recorder did not refuse it, as, under section 3, he was authorized to do if the map was not drawn "clearly and legibly," or was not of the required size. What he did was to request Bentley to take the map to the county surveyor. The law did not authorize him to make an approval by the county surveyor a condition precedent to the receiving

of the map. If it was "not more than 36 inches by 36 inches in size" and was "drawn in all details clearly and legibly," it was the recorder's duty to receive and record it. Bentley, in taking the map to the surveyor, did not withdraw it, and the subsequent recording must be regarded as having been made pursuant to the original presentation of the map on June 7th or 8th. The sale of the lots on June 19th was therefore proper, and the statute affords to Hurlburt no ground for refusing to pay the amounts which he agreed to pay, or for the return of installments paid under the contract.

It is argued by appellant that there can be no recovery on the contract for the reason that there was evidence that Bentley had parted with his title to the land. This evidence was immaterial. The action is one at law to recover money agreed to be paid by defendant. The plaintiff alleges, and there is no denial, that he has performed all the conditions of the contract to be performed by him. Hurlburt was not entitled to a conveyance until payment of the entire purchase price. When the final installment shall fall due, it will for the first time become important to ascertain whether the vendor is able to comply with his agreement to convey a good title.

The judgment, as entered, included $460.95, the amount due on contracts between Bentley and Mrs. Kempton. It is conceded that this sum could not be recovered in an action against Hurlburt. In the order denying appellant's motion for a new trial it is recited that the judgment is excessive in the sum of $460.95, and that Bentley has filed a written waiver of said amount. The denial of the motion follows these recitals. This, it is claimed, did not obviate the error in the original judgment. It has, however, long been settled in this state that on a motion for new trial the court may, if the judgment be excessive, make a conditional order denying the motion if the prevailing party will consent to remit the excess and granting it in the absence of such consent. (*Benedict* v. *Cozzens*, 4 Cal. 381; *Chapin* v. *Bourne*, 8 Cal. 294; *Gillespie* v. *Jones*, 47 Cal. 259; *Clanton* v. *Coward*, 67 Cal. 373, [7 Pac. 787]; *Thomas* v. *Gates*, 126 Cal. 1, [58 Pac. 315].) If, upon such conditional order being made, the consent to the reduction be filed, the usual practice has been to enter an absolute order denying the motion. This is, in effect, what happened in the present case. The fact that the plain-

tiff's consent to remit preceded the making of any order on the motion for new trial made it unnecessary for the court to make an order conditional in form, giving the plaintiff a certain time within which to file his consent to the reduction. The consent having already been filed, the court could properly act upon such consent and deny the motion at once.

The transcript contains copies of certain affidavits which are claimed by appellant to show newly discovered evidence, on which a new trial should have been granted. These affidavits are not, however, authenticated by being incorporated in a bill of exceptions (rule XXIX of this court, 144 Cal. lii, [78 Pac. XII]), or otherwise, and they cannot, therefore, be considered on this appeal. (*Melde* v. *Reynolds,* 120 Cal. 234, [52 Pac. 491]; *Esert* v. *Glock,* 137 Cal. 533, [70 Pac. 479].)

The judgment and order appealed from are affirmed.

Shaw, J., and Angellotti, J., concurred.

Hearing in Bank denied.