[Civ. No. 21010. First Dist., Div. Two. May 19, 1964.]

B. T. GALEB et al., Plaintiffs and Respondents, v. CUPER-
TINO SANITARY DISTRICT OF SANTA CLARA
COUNTY, Defendant and Appellant.

Sam J. Anderson and Robert W. Harrison for Defendant and Appellant.

Bohn & Williams, Charles J. Williams and Gerald Ellersdorfer as Amici Curiae on behalf of Defendant and Appellant.

Thorne, Stanton, Clopton, Herz & Stanek, John E. Thorne and William F. Stanton for Plaintiffs and Respondents.

TAYLOR, J.—The Cupertino Sanitary District of Santa Clara County (hereafter referred to as district) appeals from a judgment holding that the respondents, B. T. Galeb and his wife (hereafter referred to as Galeb) had a proprietary interest in a community sewer system and awarding them compensation therefor. The appellant district contends that: (1) the streets were dedicated to public use; (2) the dedication of streets to public use includes the sewers underneath; and (3) Galeb was not entitled to any compensation.

## FACTS

A brief review of the events leading to this action is necessary for an understanding of the questions presented: In 1941, the Galebs owned approximately 75 acres of land southeast of the Saratoga-Sunnyvale Road in an unincorporated area of Santa Clara County. They proceeded to subdivide this property.

## TRACT 184

On June 23, 1941, the Galebs filed a final subdivision map for a portion of their property immediately east of the Saratoga-Sunnyvale Road, designated as Tract No. 184, Azule Homesite No. 1, and consisting of lots 1 to 16. The map of Tract 184 showed two streets: Sea Gull Way running west from its intersection with the Saratoga-Sunnyvale Road and Zorka Avenue curving southwest from its intersection with Sea Gull Way. Both Sea Gull Way and Zorka Avenue were offered for dedication to public use. The certificate of the clerk of the Santa Clara County Board of Supervisors dated June 23, 1941, showed an approval of the subdivision map but a rejection of the street dedication. In January 1947, the Board of Supervisors of Santa Clara County accepted the street work in Tract 184 and in May 1953, accepted the streets into the county road system.

On July 17, 1946, Galeb filed in the recorder's office a declaration of tract restrictions and conditions reciting that they still owned all of the lots in Tract 184 and to facilitate the sale of these lots, they had established a large septic tank system and laterals connected thereto along Sea Gull Way and agreed to maintain this septic tank in good working order for five years from date (until 1951). In addition, Galeb granted the future owners of these lots the right and privilege of using the septic tank and sewage disposal facilities connecting to the sewer lines and laterals, on terms and conditions thereafter stated, and the covenants were to run

with the land. These restrictions made no other mention of the community sewer system constructed by Galeb.

The sewer lines in Tract 184 were constructed in 1946. Those on Sea Gull Way were to serve all of the lots fronting thereon except the northernmost lots (8, 9, 10) which were too low to be serviced thereby. Lot 3 was sold to one Jerry Williams, who paid Galeb $300 to use the sewer in Sea Gull Way and dug his own lateral. Though the record is not too clear, it appears that no other lots on Sea Gull Way were connected.

On October 2, 1946, Galeb received a letter from the county director of public health indicating approval and consent to the installation and operation of their community septic tank system. The letter stated that it was understood that Galeb would maintain the septic tank system to the satisfaction of the county for 15 years from the date of the recording of the original declarations (i.e., until 1961) and that the county's approval would permit Galeb to qualify for F.H.A. loans. Accordingly, on October 3, 1946, Galeb signed and filed an amended declaration indicating that they intended to enlarge their responsibility to maintain the septic tank and sewer disposal system on Sea Gull Way for 15 years instead of five years as originally stated. Galeb's testimony confirmed the fact that they sought the approval from the county to obtain F.H.A. financing without meeting the F.H.A. requirements of incorporating as a public utility.

The outfall line for the sewer on Sea Gull Way ran from Tract 184 across the Galeb's land to the septic tank on their remaining property. The leach field for the septic tank was then an orchard extending to the limits of Rodeo Creek to the north. In 1959, the septic tank was rendered unusable except for four to six homes as the result of a condemnation action by which the Cupertino Union School District acquired most of the leach field.

### TRACT 485

On August 16, 1948, Galeb filed a final subdivision map for an area adjoining Tract 184. This area of 43 lots (Nos. 17 to 59) was designated as Tract No. 485, Azule Homesite Unit No. 2. The map of Tract 485 showed three streets: Sea Gull Way, an easterly extension of the street shown on the map of Tract 184 to a point beyond Desanka Avenue; Ted Avenue running southeast from Sea Gull Way; and Zorka Avenue, extending south of Sea Gull Way as shown on the map of Tract 184 and another portion thereof further to the east

separated from the western part of Zorka Avenue by a block consisting of lots 42 to 49. All of these streets were offered for dedication to public use. The certificate of the clerk of the board of supervisors dated August 16, 1948, indicated approval of the subdivision map but a rejection of the street dedication. On August 25, 1952, the Board of Supervisors of Santa Clara County accepted the street work in Tract 485 and on May 4, 1953, accepted the streets into the county road system.

On August 27, 1948, Galeb filed a declaration of restrictions concerning Tract 485, the only pertinent paragraph of which provided that sewage disposal was to be by individual septic tanks of type, construction, location and disposal connection approved by the county health authority. Galeb testified that the sewage disposal in Tract 485 was by septic tank and not by their previously constructed community system because of the F.H.A. financing requirements previously mentioned. Galeb discounted the price of each of the lots in Tract 485 by $250 so that the builder could install a septic tank approved by the county. At this time, no lots on the easternmost part of Zorka Avenue were hooked into the community lines. Galeb owned six lots on the westernmost portion of Zorka Avenue and built duplexes thereon. After the filing of the map of Tract 485, these six lots were hooked to the community system.

The transcript and maps do not clearly show the total number of lots connected to the community sewer line before its acquisition by the district. There is testimony that six were connected in Tract 485 and one (lot 3) in Tract 184. It is contended by counsel for respondents, however, that there was a total of around 30 connections.

On January 30, 1950, the county health director wrote to the county planning commission, stating that the health department consented to the use of the existing community sewage system for single family residences located on lots 1 to 16 of Tract 184 and lots 17 to 42 of Tract 485 subject to the tract restrictions with the amendments and indicating that Galeb was to undertake to maintain both the septic tank and the community system to the satisfaction of the department for 25 years from date [until 1975]. The letter further stated that the lot size and soil characteristics of lots 43 to 59 in Tract 485 were suitable for the installation of individual sewage disposal units. Galeb consented and signed the amended restrictions.

On February 28, 1950, the county health director again wrote to the county planning commission. He referred to the above letter and stated that all of the lots in Tract 485 were to be provided with individual disposal systems to comply with County Ordinance No. 296 and minimum F.H.A. requirements. Galeb testified that on receiving a copy of the February 28 letter, they ceased hookups from all of the lots on Ted and Zorka Avenues in Tract 485 although they had provided the laterals and sewers.

In 1954, County Sanitation District No. 7 was created and was succeeded in 1956 by the appellant district. In 1956, the City of Saratoga was incorporated and included the subdivisions under discussion. On October 29, 1958, the county health director wrote to the board of the appellant district certifying that conditions in an area including Tracts 184 and 485 were unsanitary and dangerous to the health of the people living in the area and recommended as a necessary health measure that the district institute proceedings for the construction of a sanitary sewage disposal system. The district board ordered proceedings to be instituted under the Improvement Act of 1911 (Sts. & Hy. Code, §§ 5000-6794) for the construction of a sanitary system under the direction of the district engineer, Mark Thomas & Co., and the creation of an assessment district, Local Improvement District No. 4.

The construction of the proposed sanitary sewer system for Local Improvement District No. 4 was assigned to one of the partners of the Thomas Company, John E. Fleming. Fleming examined the Galeb community system to ascertain to what extent it could be used with the district's proposed system. He found that the community sewer in Sea Gull Way could be used for lots 3 to 7 of Tract 184 but was too shallow to serve lots 8, 9 and 10 thereof and recommended that the district construct a parallel sewer for these lots. On the easternmost portion of Zorka Avenue, Fleming could not find any sewer line beyond the third lot east of the Desanka Avenue intersection (i.e., lot 73) and recommended the construction of a district sewer. On Ted Avenue, Fleming found a sewer line but without any connections thereto. Fleming prepared a map of the proposed assessment district showing the proposed sanitary system for the district indicating the lots to be assessed and indicating the existing Galeb community sewers that could and could not be used with the proposed district system. These plans and specifications were prepared and approved by the district board.

On January 21, 1959, the district board adopted its Resolution of Intention No. 73.18 to construct in Local Improvement District No. 4 the sanitary sewers and house laterals in accordance with Fleming's plans and specifications, including the new sewers in Sea Gull Way, Zorka Avenue and Ted Avenue. At this time, the board believed that the district would be required to pay Galeb for the existing sewers in the community system incorporated into the district system. Subsequently, the board was advised that Galeb had no rights in these sewers against the district. The board then directed Fleming to submit modified plans omitting payment to Galeb for any sewers taken over by the district. These modified plans were adopted by the board on June 15, 1959, by Resolution No. 73.23.

### This Action

On February 11, 1960, the county health director notified the district board that for some time the Galeb system had been overflowing and creating a public health nuisance. Because of the gravity of the situation, the county health director asked the district to determine whether it could be instrumental in resolving the situation or at least affecting temporary relief pending an agreement. On February 17, 1960, Galeb's attorney wrote stating that the overflow could be prevented by permitting Galeb to connect his sewers to the district system in return for Galeb's forbearance of his claim against the school district for its condemnation of the septic tank leach field.

Accordingly, the parties executed an agreement dated February 27, 1960. This agreement provided that: (1) Galeb would quitclaim the community system to the district without relinquishing a claim of ownership and right to compensation therefor and reserving a right to such compensation, if any, as might be established by a court of competent jurisdiction; (2) the district expressly denied that Galeb had any compensable property interest in the system under the public streets. Thereafter, the few sections of the Galeb system usable (i.e., lots 3, 4, 5, 6 and 7 in Tract 184 and the six duplex lots) were connected with the district system then in the course of construction.

On August 17, 1960, Galeb filed this action alleging that the sewage disposal facilities taken by the county belonged to them and sought proprietary damages of over $16,000 and an additional $25,000 severance damages. A copy of the agreement of February 27, 1960, was attached to the complaint

and incorporated by reference. After its demurrer to the complaint was overruled, the district answered alleging that the Galeb community system was located in streets which had been dedicated to public use and had been continuously in common and undisputed use by the public for a period of five years preceding the construction of the county system in 1960.

Galeb failed to appear at the pretrial conference but by telephone agreed to the issues and to the introduction into evidence of the duly executed agreement of February 27, 1960, the building restrictions and modifications of Tracts 184 and 485 as well as several other documents. The court at the pretrial conference suggested that the legal issues relating to the Galeb claim of an existing proprietary interest be tried first and the amount of compensation, if liability were established, be left to a subsequent proceeding. At the first trial, it was decided that Galeb did have a proprietary interest and thereafter at the second trial, the compensation was fixed at $9,661.17 and judgment for Galeb was entered accordingly. This appeal ensues. We have concluded that the judgment must be reversed.

### STREETS DEDICATED TO PUBLIC USE

The first issue is whether the streets in question were dedicated to public use. ▮▮▮ Words of dedication on a subdivision map are an offer to dedicate but the dedication is not completed until the offer is accepted (*Stump* v. *Cornell Construction Co.*, 29 Cal.2d 448 [175 P.2d 510]). Respondents concede that the filing of the subdivision maps for Tracts 184 and 485 offered the streets in both tracts for dedication and that these offers were never withdrawn. They contend, however, that in view of the county's initial refusal of offers of dedication, the requirements of acceptance have not been met.

▮▮▮ As both offers of dedication occurred in this instance after the adoption of the Subdivision Map Act (Bus. & Prof. Code, §§ 11500 et seq., first enacted in 1937 and reinacted in 1943), the rules governing statutory rather than common law dedications control the disposition of the issue here presented (*McKinney* v. *Ruderman,* 203 Cal.App.2d 109 at p. 116 [21 Cal.Rptr. 263] ; *Quacchia* v. *County of Santa Cruz,* 164 Cal. App.2d 770 [331 P.2d 216]).

Business and Professions Code section 11616 provided at the time here relevant: "If at the time the final map is approved any streets, paths, alleys, or storm drainage easements are rejected, the offer of dedication shall remain open

and the governing body may by resolution at any later date, and without further action by the subdivider, rescind its action and accept and open the streets, paths, alleys, or storm drainage easements for public use, which acceptance shall be recorded in the office of the county recorder; provided, however, that if said offer of dedication has never been accepted, the right to accept said offer as to all or any of the streets, paths, alleys, or storm drainage easements shown on the map may be terminated and abandoned in the same manner as is prescribed for the abandonment or vacation of streets or highways by part 3, division 9, or by chapter 2, division 2, of the Streets and Highways Code, whichever is applicable.''

■ The trial court erred in excluding from evidence appellant's Exhibit N, a certified copy of a formal resolution of the Santa Clara Board of Supervisors passed May 4, 1953, ordering Sea Gull Way, Ted Avenue and Zorka Avenue to be accepted into the county road system. ■ The fact that appellant did not introduce the board's resolution into evidence until the damage phase of the proceeding is not important since it had been stipulated that, though bifurcated, the entire trial was to be considered a single proceeding. ■ In any event, the resolution would clearly be relevant on the issue of damages. It is before us as a public record erroneously excluded.

■ The supervisors' previous rejection of Galeb's offer of dedication does not render this resolution ineffective. ■ The provisions of the Subdivision Map Act clearly indicate that such a rejection is not final, that the offers remain open, and the board is authorized to accept them at any later date. The offers to dedicate the streets in question were thus accepted, and the dedication thereof completed in conformity with the statute by the resolution of the board of supervisors on May 4, 1953.

■ After the acceptance of the streets by the county in 1953, its jurisdiction over sanitary matters was transferred to the appellant's predecessor, County Sanitation District No. 7, in 1954 (Health & Saf. Code, §§ 6465 et seq.) and in 1956 to the appellant. The City of Saratoga after its incorporation in 1956 was not required to accept the streets previously accepted by the county.

■ The respondents argue that there can be no dedication here since the formal resolution of acceptance was not recorded as required by Business and Professions Code section 11616 where previous offers have been rejected. The con-

structive notice required by section 11616 is merely an ancillary ministerial act and is not an essential requirement of the statutory dedication (*Bentley* v. *Hurlburt,* 153 Cal. 796 [96 P. 890]; *Stump* v. *Cornell Construction Co.,* 29 Cal.2d 448, 452 [175 P.2d 510]).

## DEDICATION OF STREETS TO PUBLIC USE
## INCLUDES SEWERS UNDERNEATH

 The second issue presented is whether the dedication of streets to public use includes the sewers underneath. In other jurisdictions, the well settled rule is that by the dedication of land for a public street, the municipality acquires not only the easement of passage but also the right to grade and improve the surface of the street and to lay sewers, drains and pipes for various utilities beneath the surface (*Levi* v. *Schwartz* (1953) 201 Md. 575 [95 A.2d 322, 36 A.L.R.2d 1241]; cf. *Nicoll* v. *New York & N. & J. Tel. Co.,* 62 N.J.L. 733 [42 A. 583, 72 Am. St. Rep. 666]; *Riley* v. *Davidson* (Tex. Civ.App. 1946) 196 S.W.2d 557; *In re Opinion of Justices* (1937) 297 Mass. 559 [8 N.E.2d 179]; *Haven Homes, Inc.* v. *Raritan Township* (1955) 19 N.J. 239 [116 A.2d 25]; *Versailles Tp. Authority* v. *City of McKeesport* (1952) 171 Pa. Super. 377 [90 A.2d 581]; *Cheltenham & Abington Sewerage Co.* v. *Public Service Com.* (1933) 311 Pa. 175 [166 A. 649]; *Newport Manor, Inc.* v. *Carmen Land Co.* (Fla. 1955) 82 So.2d 127; *Coburn* v. *New Telephone Co.* (1901) 156 Ind. 90 [59 N.E. 324, 325, 52 L.R.A. 671]; *City of Shawnee* v. *Thompson* (Okla. 1954) 275 P.2d 323; *City of Leadville* v. *Bohn Mining Co.,* 37 Colo. 248 [86 P. 1038, 11 Ann. Cas. 443, 8 L.R.A.N.S. 422]; 10 McQuillin on Municipal Corporations (3d ed) § 30.06).

We think the rule is the same in this state though the precise question has never been presented. The Supreme Court did hold in *San Francisco* v. *Grote,* 120 Cal. 59 [52 P. 127, 65 Am.St.Rep. 155, 41 L.R.A. 335], that the city could maintain an action for ejectment for a parcel of property (a street) dedicated to public use. The court said at page 61: "It may be conceded that a naked right of way, an easement in its simplest form, a mere right to pass over the land of another, is a thing so intangible and unsubstantial as to be insufficient to support an action of ejectment. But here the right of the city goes far beyond that. The city has the right of exclusive possession, a right to disturb the soil, a right to grade and *otherwise improve the street in many ways.* In other words,

more than a mere right to the use of a street passes to the public by dedication; *in addition to the right of use there passes such an interest in the land as is necessary for the enjoyment of that use by the public.*" (Italics added.)

Section 905 of the Streets and Highways Code provides, *inter alia,* that the acquisition by the public of a highway right of way includes "the incidents necessary to enjoy and maintain the same." Where the streets are dedicated to public use in the development of a residential subdivision such "incidents" would most assuredly include gas, water and sewer mains.

Respondents argue that the authorities from other jurisdictions are not relevant here as they apply only to the right to lay new sewers but cannot be applied to the taking of existing sewers. This distinction finds no support either in reason or law. In *Versailles Tp. Authority* v. *City of McKeesport, supra,* a developer had laid water mains and dedicated to the city the streets for which they were laid. In a quiet title action, the court held that the dedication of the street included the dedication of the mains for public use, and that it was immaterial whether the mains were laid before or after the dedication, thus recognizing that the dedication of a street is not limited to the surface but encompasses the subsurface including the use of any pipes that may be there, as well as the right to lay pipes in the future.

Respondents erroneously argue that the dedication of the streets to public use does not include dedication of the existing sewers unless the sewers are specifically mentioned or shown on the map. Section 11590 of the Business and Professions Code provides that a dedication is "subject to such reservations as may be contained" in the offer. The language of the dedications here contained no express reservations and the secret intentions of the dedicator are of no significance (*Futterer* v. *City of Sacramento,* 196 Cal. 248 [237 P. 48]). The rule is that when a dedicator has caused an uncertainty as to the location and extent of a public way, an interpretation most favorable to the public and against the dedicator must be adopted (*McGinn* v. *State Board of Harbor Comrs.,* 113 Cal.App. 695, 702 [299 P. 100]).

 The streets in question in this action were properly dedicated to public use without reservation, such dedication included the subsurface sewer lines, and the respondents were not entitled to compensation therefor. Additionally, be-

cause of the serious public health menace certified to its board, the appellant district would seem entitled to take the sewers as a proper exercise of its police power (Health & Saf. Code, § 6518; *Archer* v. *City of Los Angeles,* 19 Cal.2d 19 [119 P.2d 1]; *Southern Cal. Gas Co.* v. *City of Los Angeles,* 50 Cal.2d 713 [329 P.2d 289]). In view of these conclusions, it is not necessary to discuss the questionable measure of damages applied by the trial court. We find it difficult, however, to comprehend how the respondents suffered any damage or were relieved of anything except the arduous and costly responsibility of maintaining a depreciating sewer system over a long period of years.

The judgment is reversed and the trial court directed to enter judgment for the appellant district.

Shoemaker, P. J., and Agee, J., concurred.

A petition for a rehearing was denied June 10, 1964, and respondents' petition for a hearing by the Supreme Court was denied July 15, 1964.