[Civ. No. 24459. First Dist., Div. One. May 9, 1969.]

MELINA MANCINO, Plaintiff and Appellant, v. SANTA CLARA COUNTY FLOOD CONTROL AND WATER DISTRICT, Defendant and Respondent.

Robert P. McNamee for Plaintiff and Appellant.

John R. Kennedy, County Counsel, and Leland D. Stephenson, Deputy County Counsel, for Defendant and Respondent.

ELKINGTON, J.—In an action for "Trespass and Inverse Condemnation" against Santa Clara County Flood Control and Water District (District) and others, plaintiff Melina Mancino appeals from a judgment, based on a jury verdict, in her favor and against the District. Judgment was entered in favor of the remaining defendants who are not parties to this appeal.

The subject of the action was the construction by the District, through a contractor, of a storm drainage system which, in part, ran along Emory Street in the City of San Jose (City). Its construction and operation by the District had been expressly authorized by the City. In front of plaintiff's home and below the surface of Emory Street the District built a concrete "control box" with approximate dimensions of 35 feet by 25 feet by 20 feet. Entering and exiting from the control box is a pipeline approximately 66 inches in diameter. On the street, between the curb and the cement sidewalk of plaintiff's home, an "entryway" to the control box was erected. This concrete structure is approximately 4 feet by 10 feet in size, and stands approximately 18 inches above ground level. On its top is a horizontal door opening to stairs leading downward to the control box.

Upon its completion the drainage system, except for the "entryway," was completely concealed under the surface of Emory Street. The project in no way interfered with access to plaintiff's home or the free use of her cement sidewalk. During the course of construction some physical damage was done to plaintiff's property alongside the street.

The case was given to the jury on the issue of damages to plaintiff's property up to the street line. On that question the jury returned a verdict for $1,500 in her favor. However, the court ruled, and so instructed the jury, that plaintiff was entitled to no compensation for the taking and use of such

interest as she may have had in Emory Street. That ruling is assigned as error and is the subject of this appeal.

Although much of the trial was given over to inquiry and argument concerning the origin of the City's rights, it is nevertheless conceded that Emory Street *"is a public street under the dominion and control of the City of San Jose,"* and that plaintiff's property, subject to the City's rights, extends to the center line of the street. Certain of plaintiff's arguments concerning the time, manner and extent of the dedication, are therefore irrelevant to the issues of this appeal, and need not be considered by us.

▪ The issues resolve themselves to the question of the respective rights of the City and plaintiff in the subject portion of Emory Street, and whether its taking for, or damage by, the storm drainage installation is compensable under California's Constitution, article I, section 14, and its satellite statutes and decisions.

In California the historical development of the law concerning the rights of an owner of the fee beneath a city street appears to start with *Montgomery* v. *Santa Ana Westminster Ry. Co.* (1894) 104 Cal. 186 [37 P. 786, 43 Am.St.Rep. 89, 25 L.R.A. 654]. There the court said (p. 192): ''The trend of judicial opinion, except where overshadowed and incrusted with *stare decisis,* is to a broader and more comprehensive view of the rights of the public in and to the streets and highways of city and country; and, while carefully conserving the rights of individuals to their property, the courts have not hesitated to declare the shadowy title which the owner of the fee holds to the land in a public street or highway, during the duration of the easement of the public therein, as being subject to all the varied wants of the public and essential to its health, enjoyment and progress.''

In *City & County of San Francisco* v. *Grote* (1898) 120 Cal. 59, 61 [52 P. 127, 65 Am.St.Rep. 155, 41 L.R.A. 335], speaking of a dedicated city street, the court stated: ''It may be conceded that a naked right of way, an easement in its simplest form, a mere right to pass over the land of another, is a thing so intangible and unsubstantial as to be insufficient to support an action of ejectment. But here the right of the city goes far beyond that. The city has the right of exclusive possession, a right to disturb the soil, a right to grade and otherwise improve the street in many ways. In other words, more than a mere right to the use of a street passes to the public by dedication; in addition to the right of use there passes such an

interest in the land as is necessary for the enjoyment of that use by the public.''

*Colegrove Water Co.* v. *City of Hollywood* (1907) 151 Cal. 425, 429-430 [90 P. 1053, 13 L.R.A. N.S. 904], held: ''In city streets the easement of the public is, as a result of the conditions of urban life, more extensive than in roads through sparsely inhabited regions. In cities, it is customary to devote not only the surface of the street and the space above the street to public use, but the municipality may, and frequently does, occupy the soil beneath the surface for the accommodation of sewers, gas and water pipes, electric wires, and conduits for railroads. Where the city undertakes to occupy the space above or below the surface of the street for any purpose within the scope of the public uses to which highways may be put, the use by the owner of the fee must yield to the public use. . . .''

Thereafter, the District Court of Appeal, Third District, in *Gurnsey* v. *Northern Cal. etc. Co.* (1908) 7 Cal.App. 534, 542 [94 P. 858], declared that ''our judgment yields assent to the more progressive and enlightened understanding, as we conceive it, or, as said in *Montgomery* v. *Santa Ana etc. Ry. Co.*, 104 Cal. 192, [43 Am.St.Rep. 89, 37 Pac. 788], 'a broader and more comprehensive view of the rights of the public in and to the streets and highways of city and county,' and while we should carefully conserve the rights of individuals to their property, the title which the owner in fee holds in the land in a street or highway during the duration of the easement of the public therein should be declared subject to all legitimate uses of a highway in harmony with the advanced methods and growing demands of modern society.''

More recently the court in *Galeb* v. *Cupertino Sanitary Dist.* (1964) 227 Cal.App.2d 294, 303-304 [38 Cal.Rptr. 580], said: ''The second issue presented is whether the dedication of streets to public use includes the sewers underneath. In other jurisdictions, the well settled rule is that by the dedication of land for a public street, the municipality acquires not only the easement of passage but also the right to grade and improve the surface of the street and to lay sewers, drains and pipes for various utilities beneath the surface [citations]. [ ¶ ] We think the rule is the same in this state though the precise question has never been presented. . . .''

The rule generally, throughout the United States, is expressed in 23 American Jurisprudence 2d, Dedication, section

57, page 51, in the following manner: "By the dedication of land for a street, the municipality acquires not only the easement of passage, but also the right to grade and improve the surface of the street, and to lay sewers, drains, and pipes for various utilities beneath the surface. In short, the municipality has authority to make or contract for such improvements in the property as will make it reasonably fit for the purpose of its dedication, provided that the reasonably convenient use thereof by any abutting owner is not materially affected."

The foregoing authority compels us to hold that the trial court acted properly in withholding from the jury the issue of damages resulting from the taking of, or injury to, plaintiff's property in the underlying fee of Emory Street.

█ Plaintiff contends that the size of the drainage pipes and control box is such that the rule of *Galeb* v. *Cupertino Sanitary Dist., supra,* 227 Cal.App.2d 294, relating to sewers, drains and pipes cannot reasonably apply. We disagree. It should be borne in mind that, except for the "entryway," the subject storm drain equipment is entirely out of sight under the surface of Emory Street. So long as it is constructed on and under the street, for a beneficial public use, with the permission of the City, and does not otherwise interfere with the free use of the street or plaintiff's home, mere size does not confer on plaintiff rights which she otherwise would not have.

For example, in *Porter* v. *City of Los Angeles,* 182 Cal. 515, 519-520 [189 P. 105], it was held that the owner of the underlying fee to a city street was not entitled to compensation for the construction of a public transportation tunnel beneath the street. In *Cleveland* v. *City of Detroit,* 324 Mich. 527 [37 N.W.2d 625, 11 A.L.R.2d 171], the Supreme Court of Michigan considered a case where the City of Detroit, finding it to be in the public interest, authorized the construction, under a public street, of a garage 156 feet wide, 1,000 feet long and 2 stories deep. Owners of the underlying fee sought to enjoin the project, claiming among other things "an unconstitutional invasion of plaintiff's rights in that such rights have not been acquired by condemnation or otherwise; . . ." (Pp. 530-531.) The court rejected the claim, stating (pp. 535-536):

"It is unnecessary in the instant case to determine whether plaintiff's title extends to the center of the highway, but assuming, for the sake of argument, that it does, we said in *Detroit City Ry.* v. *Mills,* 85 Mich. 634, 653 [48 N.W. 1007,

1011]: [ ¶ ] 'Whatever may have been the ancient adjudications limiting the rights of the public in the streets to passage and repassage, and whatever may now be the rule with regard to highways in the country, with the growth of population in our cities have come increased needs for heating, lighting, draining, sewerage, water, et cetera, and with these has come also a corresponding extension of the public rights in the streets. Immense sewers and water mains may be dug, and the soil removed, culverts and drains constructed without compensating the abutting owners. It may now be considered the well-settled rule that the streets of a city may be used for any purpose which is a necessary public one, and the abutting owner will not be entitled to a new compensation, in the absence of a statute giving it. . . . [ ¶ ] So far, then, as these defendants are concerned, it is immaterial whether they or the city own the fee in the street. Their rights are the same in either case. So long as they are unobstructed in the use and enjoyment of their property, having convenient ingress and egress, and the use of the street is an authorized and proper public use, they have no legal cause for complaint.' "

 Next, plaintiff insists that even though the drainage project was otherwise proper, the dedication of Emory Street did not include any right to use the air space above the surface for the construction of structures such as the "entryway" located between the curb and the sidewalk.

As we have pointed out, this structure in no way interfered with the use of plaintiff's property beyond the streetline. It did not deprive her of reasonable access or of her right to light and air. Being part of the storm drainage system it was necessary for that use by the public. We see no substantial dissimilarity from other objects commonly placed for public purposes above the surface on a public right of way, e.g., telephone and power poles, traffic signs, signals and control boxes, pedestrian underpass entrances, police and fire call boxes, fire hydrants and even trees. As stated in *Colegrove Water Co.* v. *City of Hollywood, supra,* 151 Cal. 425, 429-430, "Where the city undertakes to occupy the space *above* or below the surface of the street for any purpose within the scope of the public uses to which highways may be put, the use by the owner of the fee must yield to the public use." (Italics added.)

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.